Michael S. Davis
Greg M. Bernhard
Mary G. McCarthy
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

*Attorneys for Petitioners*
*National Union Fire Insurance Company of Pittsburgh, Pa.*
    *and American International South Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA. and AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY,<br><br>Petitioners,<br><br>- and -<br><br>THE UNITED COMPANY,<br><br>Respondent. | Case No.: 08 CIV 3147(MGC) |

## MEMORANDUM OF LAW IN SUPPORT OF PETITION OF THE AIG COMPANIES TO COMPEL ARBITRATION

### PRELIMINARY STATEMENT

National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union") and American International South Insurance Company ("AISIC") (collectively, the "AIG Companies"), on behalf of themselves and each of the related insurers that provided coverage to respondent The United Company ("Respondent"), submit this Memorandum of Law in support of their petition (the "Petition") to compel arbitration because each claim in Respondent's

Complaint filed with the U.S. District Court for the Eastern District of Kentucky (the "Complaint", attached as Exhibit 1 to the Petition) is subject to the clear and unambiguous requirement in the contract between the parties that their dispute must be resolved through arbitration. This Motion seeks to remedy Respondent's improper attempt to resolve their dispute in court, and requests that the Court refer this matter to the proper forum as required by the parties' agreement and applicable law.

## BACKGROUND

The AIG Companies and Respondent have a business relationship that goes back a number of years. Respondent holds investments in the coal and energy business. Two of its subsidiaries, Sapphire Coal Company ("Sapphire") and Wellmore Coal Company ("Wellmore"), are engaged in the coal mining business in Kentucky and Virginia respectively. In and around August or September 2006, Respondent began negotiations with the AIG Companies to consolidate its insurance programs for it and its subsidiaries into one loss sensitive, high deductible workers' compensation program. As a result, AISIC issued workers compensation policy # 720-94-31, effective November 1, 2006 to Respondent.

The parties also entered into a Payment Agreement between National Union and Respondent effective as of November 1, 2006 (the "2006 Payment Agreement"), a 2006 addendum to the Payment Agreement (the "2006 Addendum"), and certain addenda and schedules to the Payment Agreement (together with the policy, these documents establish the "Insurance Program" and these documents are referred to as the "Insurance Program

Agreements"). By their terms, the Insurance Program Agreements govern Respondent's payment obligations and collateral requirements under the Insurance Program. Fully executed copies of the 2006 Payment Agreement and the 2006 Addendum were attached to Respondent's Complaint. See, Exhibit 1 at COMPLAINT 020 and 036.

The 2006 Payment Agreement contains a broad arbitration clause (the "Arbitration Clause") by which the parties agreed that all unresolved disputes, including the dispute underlying Respondent's Complaint, "must . . . be submitted to arbitration." See, Exhibit 1 at COMPLAINT 027. The Arbitration Clause, found under a bolded and capitalized heading which reads "**HOW WILL DISAGREEMENTS BE RESOLVED?**," is extremely expansive. It encompasses the instant dispute because it governs disputes related specifically to payment obligations, as well as "[a]ny other unresolved disputes arising out of this Agreement . . ." Id. Even though Respondent filed its Complaint in the Eastern District of Kentucky, the AIG Companies bring this motion to this Court pursuant to the terms of the 2006 Addendum, which states "any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court . . . of competent jurisdiction in the City, County, and State of New York."[1] Exhibit 1 at COMPLAINT 037.

---

[1] The AIG Companies are simultaneously filing a motion for an extension of time to respond with the U.S. District Court for the E.D. Kentucky pending a decision from this Court.

## FACTS

A.  **The Parties**

In the Complaint, Respondent acknowledges it executed the 2006 Payment Agreement and the 2006 Addendum containing the Arbitration Clause, in and around December 31, 2006, for workers' compensation coverage effective November 1, 2006. In addition, Respondent alleges it made several premium payments, totaling $1,142,726.88, and provided the AIG Companies with a letter of credit for $2,323,000. See, Exhibit 1 at COMPLAINT 005, ¶16.

The parties dispute, however, certain collateral requirements for the Insurance Program, as well as the appropriate cancellation date of the Insurance Program.

While Respondent refused to sign a tendered cross-collateralization agreement, which reiterated collateral requirements contained within the Insurance Program Agreements, Respondent is nonetheless bound by the Arbitration Clause in the 2006 Payment Agreement and is thus bound to arbitrate this dispute.[2]

---

[2] Imperial A.I. Credit Companies d/b/a A.I. Credit Corporation ("AICCO") was named as a defendant in the Complaint. AICCO is moving along with the AIG Companies for an extension of time to respond to the Kentucky litigation until this motion is decided.

B.    <u>**The Insurance Program**</u>

The Insurance Program is governed by the Insurance Program Agreements, including the 2006 Payment Agreement. The 2006 Payment Agreement expressly provides that it governs the policies and schedules, including any renewals thereof, as follows:

> This Agreement begins on the Effective Date shown in the first page (the title page) of this Agreement. Unless otherwise agreed in writing, this Agreement will also apply to any *Policies* and *Schedules* that we may issue as renewals, revisions, replacements or additions to the attached *Schedule* and the *Policies* listed there.

Exhibit 1 at COMPLAINT 022. The 2006 Payment Agreement governs the obligations of Respondent (defined as "You, our Client" on page 1 of the 2006 Payment Agreement) to pay premium and collateral to the AIG Companies. The definition of "You" includes "the person or organization named as our Client in the title page of this Agreement, its predecessor and successor organizations, and each of its subsidiary, affiliated or associated organizations that are included as Named Insureds under any of the Policies" and further provides that "[e]each is jointly and severally liable to us for the entire amount of *Your Payment Obligation*." See, Exhibit 1 at COMPLAINT 023. Accordingly, the Respondent agreed to pay the AIG Companies for the obligations of itself along with Sapphire and Wellmore, the other named Plaintiffs in the Complaint.

The section of the Payment Agreement titled "WHAT HAVE YOU AND WE AGREED TO" states:

**We have agreed** to the following:

- to provide *You* insurance and services according to the *Policies* and other agreements; and

- to extend credit to You by deferring our demand for full payment of the entire amount of *Your Payment Obligation* if *You* make partial payments according to this Agreement;

To induce us to agree as above,

**You have agreed** to the following:

- **to pay us all Your Payment Obligation and to perform all Your other obligations according to this Agreement and Schedule for all entities covered by the Policies;**

- **to provide us with collateral according to this Agreement and Schedule;**

Exhibit 1 at COMPLAINT 022 (emphasis added). "Your Payment Obligation" includes not only the amounts Respondent must pay for the Insurance Program, but also includes amounts due under "any similar primary casualty Insurance Policies and agreements with us incurred before the inception date hereof" thus further broadening the obligation to arbitrate. See, Exhibit 1 at COMPLAINT 023.

Although the Policy was eventually cancelled, the Insurance Program and its corresponding payment obligations are ongoing.[3] Each insured claim that occurred during the period of coverage subjects the parties to their respective agreed share of responsibility. Workers' compensation claims often require years to resolve. On occasion, an injured employee may be entitled to weekly payments for an indeterminate number of years. For this reason, the 2006 Payment Agreement provides:

---

[3] The AIG Companies intend to show in a properly convened arbitration that the cancellation date is July 28, 2007.

>    **This Agreement will end only after You and we have settled and paid all obligations between You and us relating to this Agreement.** Neither You nor we may cancel this Agreement without the other's consent.

Exhibit 1 at COMPLAINT 022 (emphasis added).

C.  <u>**The Agreement to Arbitrate**</u>

As discussed above, the 2006 Payment Agreement contains a broad arbitration clause that expressly gives the arbitrators jurisdiction over "the entire matter in dispute, including any question as to its arbitrability" (the "Arbitration Clause") as follows:

> **HOW WILL DISAGREEMENTS BE RESOLVED?**
>
> …
>
> **What about disputes other than disputes about payment due?**
>
> <u>**Any other unresolved dispute arising out of this Agreement must be submitted to arbitration.**</u> *You* must notify us in writing as soon as *You* have submitted a dispute to arbitration. We must notify *You* in writing as soon as we have submitted a dispute to arbitration.
>
> **Arbitration Procedures**
>
> **Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators must be executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.
>
> **How the arbitration must proceed:** The arbitrators shall determine where the arbitration shall take place. The arbitration must be governed by the United States Arbitration Act, Title 9 U.S.C. Section 1, et seq. Judgment upon the award rendered by

> the arbitrators may be entered by a court having jurisdiction thereof.
>
> *You* and we must both submit our respective cases to the arbitrators within 30 days of the appointment of the third arbitrator. The arbitrators must make their decision within 60 days following the termination of the hearing, unless *You* and we consent to an extension. The majority decision of any two arbitrators, when file with *You* and us will be final and binding on *You* and on us.
>
> The arbitrators must interpret this Agreement as an honorable engagement and not merely a legal obligation. They are relieved of all judicial formalities. They may abstain from following the strict rules of law. They must make their award to effect the general purpose of this Agreement in a reasonable manner.
>
> The arbitrators must render their decision in writing, based upon a hearing in which evidence may be introduced without following strict rules of evidence, but in which cross-examination and rebuttal must be allowed.
>
> The arbitrators may award compensatory money damages and interest thereupon. They may order *You* to provide collateral to the extent required by this Agreement. **They will have exclusive jurisdiction over the entire matter in dispute, including any question as to its arbitrability.** However, they will not have the power to award exemplary damages or punitive damages, however denominated, whether or not multiplied, whether imposed by law or otherwise.
>
> **Expenses of Arbitration:** *You* and we must each bear the expense of our respective arbitrator and must jointly and equally bear with each other the expense of the third arbitrator and of the arbitration.
>
> This Section will apply whether that dispute arises before or after termination of this Agreement.

Exhibit 1 at COMPLAINT 027-028. The 2006 Addendum specifically provides that:

> **How arbitrators must be chosen:** You must choose one arbitrator and we must choose another. They will choose the third. If you or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the

>two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, either party may make application only to a court of competent jurisdiction in the City, County, and State of New York.  **Similarly, any action or proceeding concerning arbitrability, including motions to compel or to stay arbitration, may be brought only in a court of competent jurisdiction in the City, County, and State of New York.**

Exhibit 1 at COMPLAINT 037 (emphasis added).  The allegations in Respondents' Complaint clearly fall under this broad Arbitration Clause, as discussed more fully below.

### D.  The Complaint

The allegations in the Complaint relate entirely to Respondent's demand for return of premium and return of all collateral provided to date for the Insurance Program pursuant to its obligations under the 2006 Payment Agreement and 2006 Addendum.  In Count I, notwithstanding Respondent's execution of the 2006 Payment Agreement (attached to the Complaint), Respondent seeks a declaratory judgment that no insurance contracts existed.  In Count II, Respondent seeks "restitution" for a "pro-rated portion of all premium payments" made pursuant to the 2006 Payment Agreement.  Count III seeks a "release" of a letter of credit delivered pursuant to the 2006 Payment Agreement.  Count IV asserts a claim of unjust enrichment and seeks of return of the same premiums paid pursuant to the 2006 Payment Agreement.  Count V seeks damages for alleged breach of the "duty of good faith and fair dealing under the laws of the Commonwealth of Kentucky as well as other states' laws."  And Count VI appears to seek an order directing the AIG Companies to "comply with" a purported order issued by the Kentucky Office of Workers' Claims in connection with policies governed by

the 2006 Payment Agreement. As set forth above, the 2006 Payment Agreement, which contains the Arbitration Clause, expressly governs the Respondent's payment and collateral obligations.

## ARGUMENT

### I.

### BY AGREEMENT THIS PROCEEDING TO COMPEL ARBITRATION MUST BE HEARD IN NEW YORK

Although Respondent filed its action in Kentucky, under the Insurance Program Agreements, the parties explicitly agreed that:

> [A]ny action or proceeding **concerning arbitrability,** including motions to compel or to stay arbitration, may be brought **only** in a court of competent jurisdiction **in the City, County, and State of New York.**

Exhibit 1 at COMPLAINT 037 (emphasis added). Thus, this Court should enforce the Arbitration Clause as written and decide this motion to compel arbitration before any substantive proceedings take place in the Kentucky action concerning the disputes alleged in the Complaint. Respondent's unauthorized filing of the Complaint in Kentucky cannot usurp this Court's jurisdiction to decide "motions to compel or to stay arbitration" as expressly set forth in the Arbitration Clause. Moreover, the AIG Companies will file a motion for an extension of time to respond to the Kentucky action until this Court reaches its decision. Accordingly, the AIG Companies respectfully request that this Court decide the motion to compel arbitration on an expedited basis.

## II.

## **THE FEDERAL ARBITRATION ACT REQUIRES ARBITRATION**

A.   **The Arbitration Clause Is a Broad Clause and Must Be Enforced**

The 2006 Payment Agreement provides for arbitration of all payment disputes and "any other unresolved dispute arising out of this Agreement," and provides that "the arbitrators shall have exclusive jurisdiction over the entire matter in dispute, including the issue of arbitrability." See Exhibit 1 at COMPLAINT 027-028. This is a broad arbitration agreement, and the Federal Arbitration Act ("FAA") and controlling case law require that this Court enforce this arbitration agreement. Section 2 of the FAA provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, **shall be valid, irrevocable, and enforceable**, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (emphasis added.) The Supreme Court has unambiguously held that this provision of the FAA is to be followed. Shearson/American Express v. McMahon, 482 U.S. 220, 226-27, 1907 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 220, 105 S.Ct. 1238, 1241 (1985).

11

Fifteen times since its 1983 decision in Moses H. Cone, the Supreme Court has addressed the duty to arbitrate with a party to an arbitration agreement.[4] Each time, the Court required arbitration to proceed, even when confronted with a federal statute providing "exclusive" federal court jurisdiction.[5]

Similarly, the Second Circuit has consistently enforced arbitration agreements:

> The FAA, codified at 9 U.S.C. §§ 1-14, provides that written provisions to arbitrate controversies in any contract involving interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' Id. § 2. 'There is a strong federal policy favoring arbitration as an alternative means of dispute resolution.' In accordance with that policy, where, as here, the existence of an arbitration agreement is undisputed, doubts as to whether a claim falls within the scope of that agreement should be resolved in favor of arbitrability.

---

[4] Southland Corp. v. Keating, 465 U.S. 1, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984); Mitsubishi Motors Corporation v. Soler Chrysler-Plymouth, Inc., 469 U.S. 1155, 105 S.Ct. 897 (Mem), 83 L.Ed.2d 914 (1985); Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Shearson/American Exp., Inc. v. McMahon, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987); Perry v. Thomas, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426, (1987); Rodriguez de Quijas v. Shearson/American Exp., Inc., 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989); Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995); First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995); Vimar Seguros y Reaseguros, S.A. v. M/V SKY REEFER, 515 U.S. 528, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995); Doctor's Associates, Inc. v. Casarotto, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996); Green Tree Financial Corp.-Alabama v. Randolph, 529 U.S. 1052, 120 S.Ct. 1552 (Mem), 146 L.Ed.2d 458 (2000); Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003); Green Tree Financial Corp. v. Bazzle, 539 U.S. 444, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003). Buckeye Check Cashing, Inc. v. Cardegna, 2006 U.S. Lexis 1814, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (U.S. 2006). There has been only one case since 1983 where the Supreme Court did not order arbitration. In E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), the Court held that a government agency with enforcement authority would not be required to arbitrate under a contract to which it was not a party.

[5] Mitsubishi Motors Corp., 469 U.S. at 628-40 (exclusive jurisdiction of the Sherman Act); Dean Witter, 470 U.S. at 215217 (exclusive jurisdiction of the Securities Exchange Act of 1934); Shearson/American Exp., 482 U.S. at 227 (exclusive jurisdiction of the Securities Exchange Act and the Racketeer Influenced and Corrupt Organizations Act); Rodriguez de Quijas, 490 U.S. at 482-86 (exclusive jurisdiction of the Securities Exchange Act of 1934).

Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co., 307 F.3d 24, 29 (2d Cir. 1994) Citing, Hartford Accident & Indem. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001) and Moses H. Cone Memo. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983) (any doubts should be resolved in favor of arbitration). See also Garten v. Kurth, 265 F.3d 136, 142 (2d Cir. 2001) ("Under the FAA, courts are required generally to resolve questions of arbitrability in favor of arbitration."); Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 223 (2d Cir. 2001) ("It is familiar law that the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (1994) (Arbitration Act), expresses 'a liberal federal policy favoring arbitration agreements' and that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" citing Moses H. Cone Mem'l Hosp., supra, at 24-25.)

The Second Circuit in Louis Dreyfus Negoce S.A. established that when determining whether a particular dispute falls within the scope of an arbitration agreement, this Court must first classify the arbitration clause as broad or narrow. Louis Dreyfus Negoce S.A., 252 F.3d at 224; Ace Capital Re Overseas Ltd., 307 F.3d at 30-34. Specifically, this Court must determine: "whether, on the one hand, the language of the clause, taken as a whole, evidences the parties' intent to have arbitration serve as the primary recourse for disputes connected to the agreement containing the clause, or if, on the other hand, arbitration was designed to play a more limited role in any future dispute." Louis Dreyfus Negoce S.A., 252 F.3d at 225.

The Arbitration Clause at issue here must be classified as broad. In fact, two other courts in this District have granted similar motions to compel arbitration involving similar insurance programs that contained broad arbitration agreements where the Respondent had filed

actions in other states concerning arbitrable disputes. See Raytheon v. Nat'l Union Fire Ins. Co. of Pittsburgh PA, 306 F. Supp. 2d 346 (S.D.N.Y. 2004) and Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Champps Entm't, Inc., 2004 U.S. Dist. Lexis 25052 (S.D.N.Y. Dec. 13, 2004). The AIG Companies submit that these decisions are persuasive and that the reasoning of these decisions compels arbitration of the disputes asserted in the Complaint.

The AIG Companies dispute the claims asserted in the Complaint, but those claims are plainly subject to the broad Arbitration Clause and the strong federal policy favoring arbitration. As set forth above, all of the Respondent's allegations in the Complaint relate entirely to Respondent's demand for return of premium and return of all collateral provided to date for the Insurance Program pursuant to its obligations under the 2006 Payment Agreement and 2006 Addendum. Thus, the claims asserted in the Complaint are all subject to the broad Arbitration Clause contained within the 2006 Payment Agreement and modified by the 2006 Addendum. Moreover, to the extent there is any doubt concerning arbitrability, the United States Supreme Court has directed that any doubt be resolved in favor of arbitration. Moses H. Cone Memo. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 24-25 (1983).

### III.

### A HEARING ON SHORT NOTICE IS WARRANTED

Respondent has, by filing its Complaint, refused to consent to arbitration. As discussed above, the disputes asserted in the Complaint indisputably fall within the broad Arbitration Clause. Moreover, even if Respondent disputes arbitrability of the disputes asserted in the Complaint, the Arbitration Clause expressly states that: "They [the arbitrators] shall have

jurisdiction over the entire matter in dispute, including any question as to its arbitrability." See Exhibit 1 at COMPLAINT 028.  Section 4 of the FAA states, in part, that:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. **Five days**' notice in writing of such application shall be served upon the party in default. (Emphasis added).

9 U.S.C. § 4.

Accordingly, the AIG Companies seek a hearing on five days' notice pursuant to 9 U.S.C. § 4 determining that the disputes asserted in the Complaint be submitted to arbitration. In enacting this provision, the United States Congress expressed its intent that enforcement of the strong federal policy of arbitration be expedient and supersede court proceedings filed in derogation of arbitration clauses, as is the case here. Given that the AIG Companies must respond to the Complaint filed in Kentucky by March 31, 2008, this Court should hear this motion to compel arbitration before any proceedings take place in Kentucky.

## CONCLUSION

The AIG Companies respectfully request that this Court schedule a hearing on five days' notice and compel Respondent to arbitrate the disputes asserted in the Complaint.

Dated:   New York, New York
         March 27, 2008

                                        ZEICHNER ELLMAN & KRAUSE LLP

                                        By: /s/ Michael S. Davis
                                        Michael S. Davis
                                        Greg M. Bernhard
                                        Mary G. McCarthy
                                          Attorneys for Petitioners
                                        575 Lexington Avenue
                                        New York, New York 10022
                                        (212) 223-0400