John G. Nevius, Esq., P.E. (JN–0577)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY 10020
(212) 278-1000

*Attorneys for Respondent*
*The United Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA and
AMERICAN INTERNATIONAL SOUTH
INSURANCE COMPANY,

                    Petitioners,

         -and-

THE UNITED COMPANY,

                    Respondent.

Case No.: 08 CV 3147 (MGC)

**AFFIDAVIT OF JOHN G. NEVIUS,
ESQ., P.E., IN SUPPORT OF
RESPONDENT'S OPPOSITION TO
PETITIONERS' APPLICATION TO
COMPEL ARBITRATION**

STATE OF NEW YORK      )
                             ) ss.:
COUNTY OF NEW YORK  )

        JOHN G. NEVIUS, ESQ., P.E., being duly sworn, deposes and says:

        1.     I am a member with the law firm of Anderson Kill & Olick, P.C. I am duly licensed to practice in the State of New York and in the United States District Court for the Southern District.   This law firm represents the Respondent (and one of three of the plaintiffs in the pending Kentucky Action) in the above-referenced matter, The United Company ("United"), I have personal knowledge of the facts stated herein and I hereby declare and affirm as follows:

        2.     I make this Affidavit in response to Petitioners' Order to Show Cause to Compel Arbitration of the within matter.

3.     In support of United's response, Respondent relies on the enclosed Memorandum of Law and Declaration of Thomas D. Griffin.

4.     The AIG Companies' (Petitioners and certain defendants in the pending Kentucky Action) Petition to Compel Arbitration should be denied for the reasons set forth in the enclosed Memorandum of Law and Declaration of Thomas D. Griffin.

Dated:    New York, New York
          April 4, 2008

                                        ANDERSON KILL & OLICK P.C.

                              By:    _____
                                     John G. Nevius, Esq., P.E.  (JN-0577)
                                     1251 Avenue of the Americas
                                     New York, NY  10020
                                     (212) 278-1000

                                     Attorney for Respondent,
                                     The United Company

Sworn to me this 4th
day of April, 2008

_____
Notary Public

        VOLKER E.H. ANTONI
    Notary Public, State of New York
          No. 41-4952003
      Qualified in Queens County
    Commission Expires June 12, 18  2011

John G. Nevius, Esq., P.E. (JN-0577)
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
(212) 278-1000

*Attorneys for Respondent*
*The United Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA and AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY,<br><br>Petitioners,<br><br>-and-<br><br>THE UNITED COMPANY,<br><br>Respondent. | Case No.:  08 CV 3147 (J. Cedarbaum) |

## DECLARATION OF THOMAS D. GRIFFIN

I, Thomas D. Griffin, hereby state and declare pursuant to the provisions of 28 U.S.C. § 1746(2) as follows:

1.    I am the Vice President of Risk Management for The United Company ("United").

2.    I have personal knowledge of United's business and the issues surrounding the attempts to procure insurance coverage for Wellmore Coal Company and Sapphire Coal Company from AIG.

3.    United is a Virginia corporation with its principal place of business in Virginia.

4.    United does not solicit business in New York, does not have an office in New York, does not have any employees in New York, holds no property in New York and has no agents in New York.

5.    United is the majority owner of United Coal Company, LLC, a Virginia limited liability company that is the parent of Sapphire Coal Company ("Sapphire") and Wellmore Coal Company ("Wellmore"). (United, Sapphire and Wellmore are referred to as the "United Parties.")

6.    Sapphire and Wellmore have coal operations in Kentucky, Virginia and West Virginia. They do not do business in New York and hold no property in New York.

7.    In September, 2006, I contacted Acordia West Virginia ("Acordia"), an insurance brokerage to solicit quotes workers' compensation coverage for Sapphire and Wellmore. The office of Acordia that I contacted is located in Abingdon, Virginia.

8.    The United Parties worked to change the workers' compensation coverage for Wellmore and Sapphire to a combined plan for both companies that had higher deductibles and lower premiums.

9.    Acordia informed me that AIG offered coverage under a "high deductible program." On November 17, 2006, Acordia sent me a letter summarizing the proposed terms of the new workers' compensation program. This letter set forth items such as the amount of the deductible and the premiums.

10.    The letter also informed me that AIG would require a cross collateralization agreement. We were not provided a copy of the cross collateralization agreement at that time, and the proposed terms of the cross collateralization agreement were not outlined or discussed.

11.    As part of the process of putting the high deductible program in place and in the belief that the parties would work in good faith to resolve the remaining issues, United and an AIG subsidiary, National Union Fire Insurance Company of Pittsburgh, PA ("AIG/National Union") executed a payment agreement ("Payment Agreement"). AIG/National Union signed the document on November 14, 2006, while United signed the document on December 31, 2006.   United did not intend to be bound by the Payment Agreement until a mutually acceptable contract of insurance was finalized.

12.    As of December 31, 2006, the terms of the proposed cross-collateralization agreement were still unclear.

13.    On January 18, 2007, Acordia sent me a copy of AIG's proposed cross collateralization agreement.

14.    The proposed cross collateralization agreement contained terms that were not acceptable to the United Parties.

15.    On January 25, 2007, I informed Acordia that the language proposed by AIG in the cross collateralization agreement was not acceptable.

16.    On February 14, 2007, AIG sent me an email stating that AIG needed to have a cross collateralization agreement in hand by Friday, February 16.

17.    I immediately replied, informing AIG that the United Parties still had "major problems" with the language of the proposed cross collateralization agreement.   I insisted that the cross collateralization agreement had to be changed to complete the agreement.

18.    Another AIG executive responded, informing me that AIG was not going to negotiate the terms of the cross collateralization agreement and that the agreement

must be signed in the form proposed by AIG. AIG further stated that if the cross collateralization agreement was not signed by February 16, 2007 in the form proposed by AIG, then AIG would send a bill for the amount of United's letter of credit. AIG's representative emphasized the importance of the agreement to AIG, stating "we MUST have the signed cross-collateralization agreement – PERIOD."

19. By threatening to send out a bill for the amount of the letter of credit, AIG was informing me that it was changing the terms of the workers' compensation policy it was offering from a high deductible program to a program with no deductibles and high premiums. This was reiterated to me by AIG in a subsequent telephone conversation. In other words, AIG would not offer the United Parties the policy of insurance that they wanted without agreement on the terms contained in AIG's cross collateralization agreement.

20. To attempt to salvage the proposed agreement with AIG, I forwarded to Acordia on February 15, 2007 proposed revisions to the cross collateralization agreement.

21. AIG refused to revise the agreement to address the United Parties' concerns.

22. Because no agreement could be finalized with AIG and because AIG had informed me that it would change the terms of the workers' compensation policy program it would offer if the United Parties did not sign the cross collateralization agreement in the form demanded by AIG, the United Parties sought coverage elsewhere. We obtained workers' compensation coverage from Old Republic under a high deductible plan that was effective as of November 1, 2006, the same date the

proposed coverage by AIG was supposed to begin.

23.    On March 20, 2007, Mr. Jack Stewart, an insurance broker for the United Parties, informed Acordia by letter that Old Republic was providing the workers' compensation coverage that the United Parties had attempted to obtain from AIG.  In that letter, Mr. Stewart requested that AIG return the premiums paid as well as United's letter of credit.

24.    AIG refused to return any premium or release the letter of credit despite the fact that the United Parties and AIG had not reached agreement on all the terms of the insurance contract and that AIG was not liable for any claims of Sapphire and Wellmore.

25.    The United Parties informed the relevant state agencies that Old Republic, not AIG, was providing workers' compensation coverage for Sapphire and Wellmore as of November 1, 2006.  By letter dated May 10, 2007, Carla H. Montgomery, General Counsel for the Workers' Claims Legal Division for the Commonwealth of Kentucky wrote to AIG informing it that it was required by statute to file a notice of cancellation with the Office of Workers' Claims.  To date, upon information and belief, AIG has failed to file the notice.

26.    In an attempt to resolve the dispute with AIG, the United Parties sent a "No Claims Letter" to AIG on June 7, 2007 to assure AIG that (1) AIG was not responsible for any claims that might occur from November 1, 2006 and (2) that Old Republic was accepting risk and responsibility for all claims for this period.  The United Parties also offered to indemnify AIG if anyone attempted to make a claim against it.  To date, no one has attempted to make a claim against AIG, and AIG is not responsible for

any such claims.  Despite this fact, AIG still refuses to return any of the United Parties' paid premiums or to release their letter of credit.  It also refuses to file documentation with relevant state agencies to clarify that Old Republic is the insurer of record for the United Parties, a situation that has caused significant confusion in claims administration for the state agencies in Kentucky and Virginia and has led to disruption of the United Parties' business.

27.    United negotiated the terms of the proposed contract in Virginia through an insurance broker located in Virginia and AIG representatives in Ohio.

28.    The only contacts that United had with anyone in New York regarding this matter was when United was required by AIG to contact persons in New York in order to try to recover the money it had advanced after the proposed agreement unraveled. These contacts consisted of an exchange of a few letters and some telephone calls.

29.    The United Parties never reached agreement with AIG on all material terms of the insurance contract and deny that a contract existed with AIG.

30.    The documents attached as Exhibits B through M to the Memorandum of Law in Opposition to Petition of the AIG Companies to Compel Arbitration are true and correct copies of documents relating to the negotiations with AIG retained in the ordinary course of business.

31.    The United Parties never received any notification from AIG that it was planning to file a lawsuit.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of April, 2008.

_____
Thomas D. Griffin

# EXHIBIT A



Acordia
353 Falls Drive
P.O. Box 1567 (ZIP 24212-1567)
Abingdon, VA 24210-8093
Voice: 276.676.3603
Fax: 276.676.0152

www.acordia.com

November 17, 2006

Mr. Tom Griffin
The United Company
1005 Glenway Avenue
Bristol, VA   24203

Re:   **Workers Compensation Programs**

Dear Tom:

As we discussed, attached is a recap of the workers compensation programs for United Coal Company, LLC.

I'm pleased to inform you that by switching to a $1,000,000 deductible you've saved over $6,800,000. This represents a 61% savings. This savings is before you include the claims costs. Even with the claims costs included, you've saved over $5,700,000. I applaud you for your innovative & aggressive approach.

I'd like to make the following comments:

- This is the first deductible program Brickstreet has offered. They made a mistake in calculating some WV surcharges but they agreed to "eat" their $51,000 mistake.
- The "revised" Brickstreet quote includes Brokerage commission. This is different from the original quote.
- Our claims handling fee in VA & KY is 38% lower than originally proposed by AIG. This represents a $141,680 savings to UCC, LLC. Please be advised we've priced the claims administration based on "the life of the claim". This is an important issue and shouldn't be overlooked.
- On the Brickstreet program, even if you hit the $2,000,000 aggregate, United Coal Co will save over $2,706,000. This represents a very good deal for UCC, LLC.
- I've amended the payrolls to reflect accurate payrolls.
- The VA & KY policy have only one composite rate. This will make budgeting & auditing much simpler.
- Brickstreet has agreed to use any unearned premium to offset the deductible premium. Kristina is out of the office today but we will have an accurate accounting to you early next week.

I appreciate all of your assistance you've offered in the past few months. I know both Brickstreet and AIG value your input. They both acknowledge your expertise means a lot to them.

A Wells Fargo Company

A Member of the **HLA** global Network



Mr. Tom Griffin
November 17, 2006
Page 2

I've included an explanation of the funding process. I recommend you have Earl call either Gail King or Ron Casto with any specific questions/comments.

Please review everything attached and let me know if you have any questions/comments.

On behalf of everyone at Acordia, we appreciate the opportunity to handle the Workers Compensation needs of United Coal Company.

Best Regards,

Glenn W. McQuate CPCU, ARM
Senior Vice President
Acordia Energy Group

## LARGE DEDUCTIBLE QUOTE FOR UNITED COAL COMPANY, LLC

REVISED 11/7/06

__PAYROLLS__

**Wellmore**

| | | |
|---|---|---|
| Coal Mining-Surface & Drivers | | $1,500,000 |
| Coal Mining-NOC | | $4,000,000 |
| Machine Shop | | $300,000 |
| Grading of Land | | $300,000 |
| Coal Merchant | | $2,000,000 |
| Architect/Engineer | | $450,000 |
| Clerical | | $400,000 |
| | TOTAL | $8,950,000 |

**Sapphire**

| | | |
|---|---|---|
| Coal Mining-Surface & Drivers | | $1,972,806 |
| Coal Mining-NOC | | $6,865,502 |
| Coal Merchant | | $338,001 |
| Storage Warehouse | | $172,354 |
| Automobile Repair or Service | | $184,675 |
| Clerical | | $242,453 |
| | TOTAL | $9,775,702 |
| | GRAND TOTAL | $18,725,702 |

| __DEDUCTIBLE OPTIONS__ | __$500,000__ | __$750,000__ | __$1,000,000__ |
|---|---|---|---|
| Premium | $1,627,459 | $1,422,038 | $1,259,123 |
| WC Surcharges | $169,955 | $169,908 | $124,293 |
| Total Premium | $1,797,414 | $1,591,946 | $1,383,416 |
| **Rates** | | | |
|     Specific | 7.66 | 6.44 | 5.57 |
|     Aggregate | 1.031 | 1.154 | 1.154 |
|     Total | 8.691 | 7.594 | 6.724 |
| Collateral | $1,930,000 | $2,160,000 | $2,323,000 |

**Current Premiums**

| | | | | |
|---|---|---|---|---|
| Wellmore | $2,301,444 | | | |
| Sapphire | $1,177,591 | | | |
| TOTAL | $3,479,035 | $1,681,621 Savings | $1,887,089 Savings | $2,095,619 |
| | | 48% Reduction | 54% Reduction | 60% Savings |

| | | | |
|---|---|---|---|
| AIG CLAIMS FEE | $308,000 | $345,600 | $371,600 |
| AES CLAIMS FEE | $230,000 | $230,000 | $230,000 |

Comments:

AIG had built $371,680 into their program for claims handling fees. AES can handle the claims for $230,000, a $141,680 savings This represents a 38% savings to UCC.

AIG is using a composite rate for both states.

The premium for Sapphire includes $124,293 in KY taxes/surcharges.

# UNITED COAL CO
# LARGE DEDUCTIBLE

Revised 11/17/06

| | CURRENT PREMIUM | $1,000,00 DEDUCTIBLE | SAVINGS |
|---|---|---|---|
| WV OPERATIONS | $ 7,676,087.00 | $2,970,050 | $4,706,037 (61% Savings) |
| SAPPHIRE | $ 1,177,591.00 | $781,618 | $395,973 (34% Savings) |
| WELLMORE | $ 2,301,444.00 | $601,798 | $1,699,646 (74% Savings) |
| TOTAL | $ 11,155,122.00 | $4,353,466 | $6,801,656 (61% Savings) |

## COMMENTS:

1. Acordia Employers Service will be the claims administrator on both of the above progams. Claims Administration fees are as follows:

| | |
|---|---|
| CRCC | $22,500/quarter |
| Pocahontas | $22,500/quarter |
| Wellmore | $28,750/quarter |
| Sapphire | $28,750/quarter |

AIG had built into their program $371,680 for claims handling fees. Acordia Employers Service can handle these claims for $230,000, a $141,680 savings.

2. The Brickstreet quote includes 4% brokerage commission.

3. Collateral Requirements are as follows:

| | |
|---|---|
| Brickstreet | $1,000,000 |
| AIG | $2,323,000 |

4. AIG will require a cross collateral agreement since there is already collateral in place for Sapphire

5. AIG has requested a copy of your latest in-house financial statements

6. AIG is requiring the LOC wording concerning the GL policy be corrected.

7. Incurred claims through 10/31/06 are as follows:

| | |
|---|---|
| WV Operations: | $624,214 |
| Wellmore: | $299,430 |
| Sapphire: | $139,006 |

# EXHIBIT B

ENC

**WACHOVIA** IRREVOCABLE STANDBY LETTER OF CREDIT NUMBER SM223579W

| LETTER OF CREDIT AMOUNT | ISSUE DATE | EXPIRY DATE |
|---|---|---|
| USD2,323,000.00 | 12/21/06 | 12/22/07 |

BENEFICIARY:
NATIONAL UNION FIRE INSURANCE CO
OF PITTSBURGH, PA, AND/OR
AMERICAN HOME ASSURANCE COMPANY,
AND/OR AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE COMPANY, AND/OR
THE INSURANCE COMPANY OF THE STATE
OF PENNSYLVANIA, AND/OR
COMMERCE AND INDUSTRY INSURANCE COMPANY, AND/OR
AIU INSURANCE COMPANY, AND/OR
BIRMINGHAM FIRE INSURANCE COMPANY OF PENNSYLVANIA, AND/OR
ILLINOIS NATIONAL INSURANCE COMPANY, AND/OR
AMERICAN INTERNATIONAL SOUTH INSURANCE COMPANY, AND/OR
NATIONAL UNION FIRE INSURANCE COMPANY OF LOUISIANA, AND/OR
AMERICAN INTERNATIONAL PACIFIC INSURANCE COMPANY, AND/OR
GRANITE STATE INSURANCE COMPANY, AND/OR
NEW HAMPSHIRE INSURANCE COMPANY, AND/OR
LEXINGTON INSURANCE COMPANY, AND/OR
LANDMARK INSURANCE COMPANY, AND/OR
STARR EXCESS LIABILITY INSURANCE COMPANY LIMITED
P.O. BOX 923
WALL STREET STATION
NEW YORK, N.Y. 10268
ATTN: MR. ART STIDWELL

APPLICANT:
THE UNITED COMPANY
1005 GLENWAY AVENUE
BRISTOL, VA 24201

GENTLEMEN:

WE HEREBY ESTABLISH THIS IRREVOCABLE LETTER OF CREDIT IN FAVOR OF THE
AFORESAID ADDRESSEES (EACH, THE "BENEFICIARY") FOR DRAWINGS UP TO UNITED
STATES DOLLARS TWO MILLION THREE HUNDRED TWENTY THREE THOUSAND AND 00/100
EFFECTIVE IMMEDIATELY. THIS LETTER OF CREDIT IS ISSUED, PRESENTABLE
AND PAYABLE AT OUR OFFICE AT 401 LINDEN STREET, MAILCODE, NC6031
ATTENTION STANDBY LETTER OF CREDIT DEPARTMENT, WINSTON-SALEM, NC
27101 U.S.A. AND EXPIRES WITH OUR CLOSE OF BUSINESS ON 12/22/07.

THE TERM "BENEFICIARY" INCLUDES ANY SUCCESSOR BY OPERATION OF LAW OF EACH
NAMED BENEFICIARY, INCLUDING, WITHOUT LIMITATION, ANY LIQUIDATOR,
REHABILITATOR, RECEIVER OR CONSERVATOR.

WE HEREBY UNDERTAKE TO PROMPTLY HONOR YOUR SIGHT DRAFT(S) DRAWN ON US,
INDICATING OUR CREDIT NO. SM223579W, FOR ALL OR ANY PART OF THIS
CREDIT IF PRESENTED AT OUR OFFICE SPECIFIED IN PARAGRAPH ONE ON OR BEFORE THE
EXPIRY DATE OR ANY AUTOMATICALLY EXTENDED EXPIRY DATE. ANY ONE BENEFICIARY,
OR COMBINATION OF BENEFICIARIES, ACTING INDIVIDUALLY OR COLLECTIVELY,
MAY DRAW ON THIS LETTER OF CREDIT IN FULL OR IN PART, AND ANY ACTION TAKEN
BY ANY OR ALL BENEFICIARIES HEREUNDER SHALL BIND EACH OF THEM.

CONTINUED ON NEXT PAGE WHICH FORMS AN INTEGRAL PART OF THIS
LETTER OF CREDIT.

ENC

# WACHOVIA

EXCEPT AS EXPRESSLY STATED HEREIN, THIS UNDERTAKING IS NOT SUBJECT TO ANY AGREEMENT, CONDITION OR QUALIFICATION. THE OBLIGATION OF WACHOVIA BANK, NATIONAL ASSOCIATION, UNDER THIS LETTER OF CREDIT IS THE INDIVIDUAL OBLIGATION OF WACHOVIA BANK, NATIONAL ASSOCIATION, AND IS IN NO WAY CONTINGENT UPON REIMBURSEMENT WITH RESPECT THERETO.

IT IS A CONDITION OF THIS LETTER OF CREDIT THAT IT SHALL BE DEEMED AUTOMATICALLY EXTENDED WITHOUT AMENDMENT FOR ONE YEAR FROM THE EXPIRY DATE HEREOF, OR ANY FUTURE EXPIRATION DATE, UNLESS AT LEAST THIRTY DAYS (30) PRIOR TO ANY EXPIRATION DATE WE NOTIFY YOU BY REGISTERED MAIL THAT WE ELECT NOT TO CONSIDER THIS LETTER OF CREDIT RENEWED FOR ANY SUCH ADDITIONAL PERIOD.

THIS LETTER OF CREDIT IS SUBJECT TO AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK AND THE 1993 REVISION OF THE UNIFORM CUSTOMS AND PRACTICE FOR DOCUMENTARY CREDITS OF THE INTERNATIONAL CHAMBER OF COMMERCE (PUBLICATION 500) AND, IN THE EVENT OF ANY CONFLICT, THE LAWS OF THE STATE OF NEW YORK WILL CONTROL. IF THIS CREDIT EXPIRES DURING AN INTERRUPTION OF BUSINESS AS DESCRIBED IN ARTICLE 17 OF SAID PUBLICATION 500, THE BANK, HEREBY SPECIFICALLY AGREES TO EFFECT PAYMENT IF THIS CREDIT IS DRAWN AGAINST WITHIN THIRTY (30) DAYS AFTER THE RESUMPTION OF BUSINESS.

SINCERELY,

AUTHORIZED SIGNATURE
WACHOVIA BANK, NATIONAL ASSOCIATION
SJK

THE ORIGINAL OF THIS LETTER OF CREDIT CONTAINS AN EMBOSSED SEAL OVER THE AUTHORIZED SIGNATURE.

PLEASE DIRECT ANY CORRESPONDENCE INCLUDING DRAWING OR INQUIRY QUOTING OUR REFERENCE NUMBER TO:

WACHOVIA BANK, NATIONAL ASSOCIATION
401 LINDEN STREET
WINSTON-SALEM, NC 27101
ATTN: STANDBY LETTER OF CREDIT UNIT

ALL INQUIRIES REGARDING THIS CREDIT SHOULD BE DIRECTED TO STANDBY CUSTOMER CARE 1-800-776-3862.

# EXHIBIT C

Message

ENC.

## Pete Lunati

| | |
|---|---|
| **From:** | Tom Griffin [TGriffin@unitedco.net] |
| **Sent:** | Wednesday, April 04, 2007 10:06 A |
| **To:** | Pete Lunati |
| **Subject:** | FW: United/Sapphire Cross Collateralization Agreement-PROBLEMS |
| **Importance:** | High |

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

**From:** Tom Griffin
**Sent:** Wednesday, February 14, 2007 9:47 AM
**To:** 'Pete Lunati'; 'Janet Bradley'; 'Jack Stewart'
**Subject:** FW: United/Sapphire Cross Collateralization Agreement-PROBLEMS
**Importance:** High

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

**From:** Tom Griffin
**Sent:** Thursday, January 25, 2007 1:46 PM
**To:** 'Harvey, Jimbill'; 'Mcquate, Glenn'
**Subject:** FW: United/Sapphire Cross Collateralization Agreement-PROBLEMS
**Importance:** High

Glenn: As you can see there is a problem with AIG's proposed language.While we very much want to accommodate them we cannot do it in the manner required in the agreement in it's present form.Paragraph 3 is of major concern we could not agree to those conditions.AIG needs to get real on this.-TDG

Message                                                                           Page 2 of 4

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Anita Gilliam
**Sent:** Thursday, January 25, 2007 1:35 PM
**To:** Tom Griffin; Kenny Dockery
**Cc:** Brian Sullivan
**Subject:** RE: United/Sapphire Cross Collateralization Agreement

Tom—

    Typically in a cross-collateralization agreement the parties just agree that their respective collateral covers
the obligations of both parties.  The Cross-Collateralization Agreement that National Union proposes frankly
doesn't quite do that while at the same time its terms go far beyond the typical cross-collateralization agreement.
Paragraph 3 provides that if either the Sapphire Security or the United Security is reduced to the point that
National Union deems itself insecure, then United must provide collateral acceptable to National Union; it also
requires United to provide collateral acceptable to National Union if we sell Sapphire.  Have we agreed to the
terms of Paragraph 3, particularly the latter item obligating us to provide collateral even if we no longer own
Sapphire?

Anita

---

**From:** Tom Griffin
**Sent:** Thursday, January 18, 2007 3:36 PM
**To:** Kenny Dockery
**Cc:** Brian Sullivan; Anita Gilliam
**Subject:** FW: United/Sapphire Cross Collateralization Agreement
**Importance:** High

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Mcquate, Glenn [mailto:glenn_mcquate@acordia.com]
**Sent:** Thursday, January 18, 2007 7:42 AM

4/4/2007

**To:** Tom Griffin
**Cc:** Shiley, Michael; Harvey, Jimbill
**Subject:** FW: United/Sapphire Cross Collateralization Agreement

Tom,

I received the note below form Mike Shiley concerning the cross-collateralization agreement. I've attached another copy of the agreement.

Please have the agreement signed/executed and return to me.

Thanks for all of your assistance.

Glenn

---

**From:** Shiley, Michael [mailto:Michael.Shiley@AIG.com]
**Sent:** Wednesday, January 17, 2007 2:17 PM
**To:** Mcquate, Glenn; Harvey, Jimbill
**Cc:** Lappe, Les
**Subject:** FW: United/Sapphire Cross Collateralization Agreement

Glenn, can you check with Tom Griffin and update us on the status of this? Thanks.

Mike Shiley
Assistant Vice President
AIG Global Marine and Energy - Casualty
1375 E. 9th St., Suite 3000
Cleveland, OH 44114
(216) 479-8948
(216) 696-2842 fax

-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Wednesday, January 17, 2007 11:02 AM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark; Horner, Harry; Philippides, Thomas
**Subject:** United/Sapphire Cross Collateralization Agreement

Do we need more time to receive this document signed?
Can we follow-up with a confirmation date?

Thanks,
Tom....
=================================================================
-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Thursday, January 04, 2007 9:00 AM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark; Philippides, Thomas; Horner, Harry
**Subject:** United/Sapphire Cross Collateralization Agreement
**Importance:** High

4/4/2007



Please remind our good friends that this item is still O/S and I would appreciate it signed by 1/12/07.  Our entire security structure is based on the cross collateralization agreement.

Thanks,
Tom....
===================================================
-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Friday, December 08, 2006 4:56 PM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark
**Subject:** United/Sapphire Cross Collateralization Agreement

OK to go, see attached.

Tom....
===================================================
-----Original Message-----
**From:** Pasko, Mark
**Sent:** Tuesday, November 14, 2006 5:04 PM
**To:** Philippides, Thomas
**Subject:** United/Sapphire Cross Collateralization Agreement

Tom:

Please see the attached draft.  Please look at the last sentence in para 4 and determine whether that is still necessary.  Let me know if you have any edits.  Thanks.

Mark T. Pasko
Division Counsel
AIG Global Marine and Energy
175 Water Street, 15th Floor
New York, NY 10038
Tel:  (212) 458-5707
Fax:  (212) 458-5687

PRIVILEGED AND CONFIDENTIAL:
The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities.  If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.

# EXHIBIT D

## Pete Lunati

| | |
|---|---|
| **From:** | Tom Griffin [TGriffin@unitedco.net] |
| **Sent:** | Wednesday, April 04, 2007 10:06 A |
| **To:** | Pete Lunati |
| **Subject:** | FW: United/Sapphire Cross Collate ization Agreement-PROBLEMS |
| **Importance:** | High |

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Tom Griffin
**Sent:** Wednesday, February 14, 2007 9:47 AM
**To:** 'Pete Lunati'; 'Janet Bradley'; 'Jack Stewart'
**Subject:** FW: United/Sapphire Cross Collateraliza on Agreement-PROBLEMS
**Importance:** High

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Tom Griffin
**Sent:** Thursday, January 25, 2007 1:46 PM
**To:** 'Harvey, Jimbill'; 'Mcquate, Glenn'
**Subject:** FW: United/Sapphire Cross Collateraliza on Agreement-PROBLEMS
**Importance:** High

Glenn: As you can see there is a problem with AIG's proposed language.While we very much want to accommodate them we cannot do it in the manner required in the agreement in it's present form.Paragraph 3 is of major concern & we could not agree to those conditions.AIG needs to get real on this.-TDG



Thomas D. Griffin,
Vice President of Risk Management
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Anita Gilliam
**Sent:** Thursday, January 25, 2007 1:35 PM
**To:** Tom Griffin; Kenny Dockery
**Cc:** Brian Sullivan
**Subject:** RE: United/Sapphire Cross Collateralization Agreement

Tom—

      Typically in a cross-collateralization agreement the parties just agree that their respective collateral covers the obligations of both parties. The Cross-collateralization Agreement that National Union proposes frankly doesn't quite do that while at the same time its terms go far beyond the typical cross-collateralization agreement. Paragraph 3 provides that if either the Sapphire Security or the United Security is reduced to the point that National Union deems itself insecure, then United must provide collateral acceptable to National Union; it also requires United to provide collateral acceptable to National Union if we sell Sapphire. Have we agreed to the terms of Paragraph 3, particularly the latter item obligating us to provide collateral even if we no longer own Sapphire?

Anita

---

**From:** Tom Griffin
**Sent:** Thursday, January 18, 2007 3:36 PM
**To:** Kenny Dockery
**Cc:** Brian Sullivan; Anita Gilliam
**Subject:** FW: United/Sapphire Cross Collateralization Agreement
**Importance:** High

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Mcquate, Glenn [mailto:glenn_mcquate@acordia.com]
**Sent:** Thursday, January 18, 2007 7:42 AM

**To:** Tom Griffin
**Cc:** Shiley, Michael; Harvey, Jimbill
**Subject:** FW: United/Sapphire Cross Collateralization Agreement

Tom,

I received the note below form Mike Shiley concerning the cross-collateralization agreement. I've attached another copy of the agreement.

Please have the agreement signed/executed and return to me.

Thanks for all of your assistance.

Glenn

---

**From:** Shiley, Michael [mailto:Michael.Shiley@AIG.com]
**Sent:** Wednesday, January 17, 2007 2:17 PM
**To:** Mcquate, Glenn; Harvey, Jimbill
**Cc:** Lappe, Les
**Subject:** FW: United/Sapphire Cross Collateralization Agreement

Glenn, can you check with Tom Griffin and update us on the status of this?  Thanks.

Mike Shiley
Assistant Vice President
AIG Global Marine and Energy - Casualty
1375 E. 9th St., Suite 3000
Cleveland, OH 44114
(216) 479-8948
(216) 696-2842 fax

-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Wednesday, January 17, 2007 11:02 AM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark; Horner, Harry; Philippides, Thomas
**Subject:** United/Sapphire Cross Collateralization Agreement

Do we need more time to receive this document signed?
Can we follow-up with a confirmation date?

Thanks,
  Tom....
=================================================
-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Thursday, January 04, 2007 9:00 AM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark; Philippides, Thomas; Horner, Harry
**Subject:** United/Sapphire Cross Collateralization Agreement
**Importance:** High



Please remind our good friends that this item is still O/S and I would appreciate it signed by 1/12/C7.  Our entire security structure is based on the cross collateralization agreement.

Thanks,
Tom....
=================================================
-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Friday, December 08, 2006 4:55 PM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark
**Subject:** United/Sapphire Cross Collateralization Agreement

OK to go, see attached.

Tom....
=================================================
-----Original Message-----
**From:** Pasko, Mark
**Sent:** Tuesday, November 14, 2006 5:04 PM
**To:** Philippides, Thomas
**Subject:** United/Sapphire Cross Collateralization Agreement

Tom:

Please see the attached draft.  Please look at the last sentence in para 4 and determine whether that is still necessary.  Let me know if you have any edits.  Thanks.

Mark T. Pasko
Division Counsel
AIG Global Marine and Energy
175 Water Street, 15th Floor
New York, NY 10038
Tel: (212) 458-5707
Fax: (212) 458-5687

PRIVILEGED AND CONFIDENTIAL:
The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities.  If you are not the intended recipient, you must not use or disseminate the information.  Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.

**Reynolds Richards**

c/o Anderson Kill & Olick, P.C.
1251 Avenue of the Americas, 42nd Floor
New York, NY 10020

April 04, 2008

Pfeiffer Partners Architects, Inc.
811 West 7th Street
Los Angeles CA 90017

TO: Professional services rendered from July 01, 2007 to
July 21, 2007, as follows:

| | | | Hours | Amount |
|---|---|---|---|---|
| 7/2/2007 DAZ | Received copy of letter with June 22 filing of annual report to dept. of education for continued compliance for purposes of doing business in NY. | | 0.10 | 35.00 |
| 7/3/2007 DAZ | Reviewed Hugh Hochberg report on Ownership Expansion/Transition (draft) dated 7/26/05. | | 0.70 | 245.00 |
| 7/10/2007 DAZ | Call from NP with questions on compensation matrix. | | 0.20 | 70.00 |
| 7/11/2007 DAZ | Reviewed compensation matrices with and without SJ. | | 0.30 | 105.00 |
| 7/12/2007 DAZ | Continued review of profit distribution matrix; began revising same to reflect new percentages. | | 0.40 | 140.00 |
| 7/13/2007 DAZ | Revised computation matrix; e-mailed copy to NP with cover note. Call from NP, discussed changes. Made changes & e-mailed revised copy to NP. | | 1.00 | 350.00 |

|  |  |  |
|---|---|---|
| For professional services rendered | 2.70 | $945.00 |
| Previous balance | | $14,768.74 |
| Balance due | | $15,713.74 |

Timekeeper Summary

| Name | Hours | Rate | Amount |
|---|---|---|---|
| | 2.70 | 350.00 | $945.00 |
| Dennis A. Zagroba | | | |

Note: This page NOT sent with bill to client.

# EXHIBIT E

## CROSS-COLLATERALIZATION AGREEMENT

Effective the 1st day of November 2006

by and between

## NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA.
**In its own behalf and on behalf of other American International Companies, including but not limited to:**

American Home Assurance Company
The Insurance Company of the State of Pennsylvania
National Union Fire Insurance Company of Vermont
Commerce and Industry Insurance Company
Birmingham Fire Insurance Company
Illinois National Insurance Company
American International South Insurance Company
AIU Insurance Company
Granite State Insurance Company
New Hampshire Insurance Company

(hereinafter called "Company", "us" or "our")

and

## SAPPHIRE COAL COMPANY

(hereinafter called "Sapphire")

and

## THE UNITED COMPANY

(hereinafter called "United")

**WHEREAS,** for the policy term commencing November 1, 2005, Company issued to Sapphire certain policies of insurance providing coverage on a deductible basis for commercial general liability, automobile liability, workers' compensation and employer's liability, ("Sapphire Policies"); and,

**WHEREAS,** in order to properly document all relevant components of Sapphire's deductible insurance program, including but not limited to Sapphire's financial and reimbursement obligations, the Company and Sapphire executed a payment agreement that, together with any and all addenda and schedules thereto, are hereinafter collectively referred to as the "Sapphire Agreements"; and,

**WHEREAS,** the Sapphire Policies in conjunction with the Sapphire Agreements collectively set forth the various obligations, including, but not limited to deductible obligation of Sapphire to Company ("Sapphire Obligations"); and,

**WHEREAS** in order to secure Company for the Sapphire Obligations, Sapphire has, pursuant to the terms and conditions of the Sapphire Agreements, provided to Company cash collateral, ("Sapphire Security"); and,

**WHEREAS**, for the policy term commencing November 1, 2006, Company issued to United, the parent company of Sapphire, certain policies of insurance providing coverage on a deductible basis for commercial general liability, automobile liability, workers' compensation and employer's liability, ("United Policies"); and,

**WHEREAS**, in order to properly document all relevant components of United's deductible insurance program, including but not limited to United's financial and reimbursement obligations, the Company and United executed a payment agreement that, together with any and all addenda and schedules thereto, are hereinafter collectively referred to as the "United Agreements"; and,

**WHEREAS**, the United Policies in conjunction with the United Agreements collectively set forth the various obligations, including, but not limited to, deductible obligation of United to Company ("United Obligations"); and,

**WHEREAS** in order to secure Company for the United Obligations, United is, pursuant to the terms and conditions of the United Agreements, required to procured for the benefit of the Company certain collateral in a form acceptable to Company, ("United Security"); and,

**WHEREAS**, Sapphire, United and Company (Collectively the "Parties") seek to have the Sapphire Security and United Security available to Company to secure both the Sapphire Obligations as well as the United Obligations; and,

**WHEREAS**, Company is agreeable to use of the Sapphire Security and United Security as collateral for both the Sapphire Obligations as well as the United Obligations.

**NOW THEREFORE**, in consideration of the payment of premium and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. Nothing herein will serve to amend, alter or eliminate any right Company has under the Sapphire Agreements or United Agreements including, but not limited to, Company's ability to collect from Sapphire or United security under either Agreement as Company deems necessary.

2. This Cross Collateralization Agreement will not alter, amend or eliminate any of the terms and conditions of either the Sapphire or United Agreements.

3. In the event United divests itself of Sapphire, or the Sapphire Security or United Security is reduced to an amount that Company, at its sole discretion, contends is insufficient to adequately permit cross collateralization of the Sapphire Obligations or United Obligations, United will be required pursuant to the terms of the United Obligations, to procure for the benefit of the Company acceptable collateral as required by Company.

4. Nothing herein will serve to alter or amend the terms and conditions by which the Sapphire Security or United Security earn interest. Any and all interest applied to the Sapphire Security or United Security is subject to the terms of this Cross Collateralization Agreement. By the terms of this Cross Collateralization Agreement, Sapphire Security is not subject to the accruement of any additional interest over and above the interest earned on the United Security.

5. This Cross Collateralization Agreement will terminate only upon the mutual written consent of the parties.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be executed by their duly authorized representatives in New York, New York, this 11th day of December, 2006.

**NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA.**
On behalf of itself and its affiliated companies first named above

BY: _Michael Suly_

TITLE:        Assistant Vice President

ADDRESS:  70 Pine Street
New York, New York 10270

and in _____, _____, this \_\_\_\_ day of December 2006.

**SAPPHIRE COAL COMPANY**

BY: _____

TITLE: _____

ADDRESS: _____
_____

and in _____, _____, this \_\_ day of December 2006.

**THE UNITED COMPANY**

BY: _____

TITLE: _____

ADDRESS: _____
_____

# EXHIBIT F

Pete Lunati

**From:** Tom Griffin [TGriffin@unitedco.net]
**Sent:** Wednesday, April 04, 2007 10:__ AM
**To:** Pete Lunati
**Subject:** FW: United/Sapphire Cross Collateralization Agreement-PROBLEMS
**Importance:** High

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

**From:** Tom Griffin
**Sent:** Wednesday, February 14, 2007 9:47 AM
**To:** 'Pete Lunati'; 'Janet Bradley'; 'Jack Stewart'
**Subject:** FW: United/Sapphire Cross Collateralization Agreement-PROBLEMS
**Importance:** High

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

**From:** Tom Griffin
**Sent:** Thursday, January 25, 2007 1:46 PM
**To:** 'Harvey, Jimbill'; 'Mcquate, Glenn'
**Subject:** FW: United/Sapphire Cross Collateralization Agreement-PROBLEMS
**Importance:** High

Glenn: As you can see there is a problem with AIG's proposed language.While we very much want to accommodate them we cannot do it in the manner required in the agreement in it's present form.Paragraph 3 is of major concern & we could not agree to those conditions.AIG needs to get real on this.-TDG



Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Anita Gilliam
**Sent:** Thursday, January 25, 2007 1:35 PM
**To:** Tom Griffin; Kenny Dockery
**Cc:** Brian Sullivan
**Subject:** RE: United/Sapphire Cross Collateralization Agreement

Tom—

 Typically in a cross-collateralization agreement the parties just agree that their respective collateral covers the obligations of both parties.  The Cross-Collateralization Agreement that National Union proposes frankly doesn't quite do that while at the same time its terms go far beyond the typical cross-collateralization agreement. Paragraph 3 provides that if either the Sapphire Security or the United Security is reduced to the point that National Union deems itself insecure, then United must provide collateral acceptable to National Union; it also requires United to provide collateral acceptable to National Union if we sell Sapphire.  Have we agreed to the terms of Paragraph 3, particularly the latter item obligating us to provide collateral even if we no longer own Sapphire?

Anita

---

**From:** Tom Griffin
**Sent:** Thursday, January 18, 2007 3:36 PM
**To:** Kenny Dockery
**Cc:** Brian Sullivan; Anita Gilliam
**Subject:** FW: United/Sapphire Cross Collateralization Agreement
**Importance:** High

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

---

**From:** Mcquate, Glenn [mailto:glenn_mcquate@acordia.com]
**Sent:** Thursday, January 18, 2007 7:42 AM

4/4/2007

Message

**To:** Tom Griffin
**Cc:** Shiley, Michael; Harvey, Jimbill
**Subject:** FW: United/Sapphire Cross Collateralization Agreement

Tom,

I received the note below form Mike Shiley concerning the cross-collateralization agreement. I've attached another copy of the agreement.

Please have the agreement signed/executed and return to me.

Thanks for all of your assistance.

Glenn

---

**From:** Shiley, Michael [mailto:Michael.Shiley@AIG.com]
**Sent:** Wednesday, January 17, 2007 2:17 PM
**To:** Mcquate, Glenn; Harvey, Jimbill
**Cc:** Lappe, Les
**Subject:** FW: United/Sapphire Cross Collateralization Agreement

Glenn, can you check with Tom Griffin and update us on the status of this?  Thanks.


Mike Shiley
Assistant Vice President
AIG Global Marine and Energy - Casualty
1375 E. 9th St., Suite 3000
Cleveland, OH 44114
(216) 479-8948
(216) 696-2842 fax


-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Wednesday, January 17, 2007 11:02 AM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark; Horner, Harry; Philippides, Thomas
**Subject:** United/Sapphire Cross Collateralization Agreement

Do we need more time to receive this document signed?
Can we follow-up with a confirmation date?

Thanks,
  Tom....
==============================================
-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Thursday, January 04, 2007 9:00 AM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark; Philippides, Thomas; Horner, Harry
**Subject:** United/Sapphire Cross Collateralization Agreement
**Importance:** High

Message

Please remind our good friends that this item is still O/S and I would appreciate it signed by 1/12/07. Our entire security structure is based on the cross collateralization agreement.

Thanks,
Tom....

============================================================

-----Original Message-----
**From:** Philippides, Thomas
**Sent:** Friday, December 08, 2006 4:56 PM
**To:** Lappe, Les; Shiley, Michael
**Cc:** Pasko, Mark
**Subject:** United/Sapphire Cross Collateralization Agreement

OK to go, see attached.

Tom....

============================================================

-----Original Message-----
**From:** Pasko, Mark
**Sent:** Tuesday, November 14, 2006 5:04 PM
**To:** Philippides, Thomas
**Subject:** United/Sapphire Cross Collateralization Agreement

Tom:

Please see the attached draft. Please look at the last sentence in para 4 and determine whether that is still necessary. Let me know if you have any edits. Thanks.

Mark T. Pasko
Division Counsel
AIG Global Marine and Energy
175 Water Street, 15th Floor
New York, NY 10038
Tel: (212) 458-5707
Fax: (212) 458-5687

PRIVILEGED AND CONFIDENTIAL:
The information in this email (and any attachments hereto) is confidential and may be protected by legal privileges and work product immunities. If you are not the intended recipient, you must not use or disseminate the information. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege. If you have received this email in error, please immediately notify me by "Reply" command and permanently delete the original and any copies or printouts thereof. Although this email and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by American International Group, Inc. or its subsidiaries or affiliates either jointly or severally, for any loss or damage arising in any way from its use.

# EXHIBIT G

**Pete Lunati**

| | |
|---|---|
| **From:** | Tom Griffin [TGriffin@unitedco.net] |
| **Sent:** | Wednesday, April 04, 2007 10:07 AM |
| **To:** | Pete Lunati |
| **Subject:** | FW: AIG Cross Collateralization Agreement |

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

-----Original Message-----
From: Horner, Harry [mailto:Harry.Horner@AIG.com]
Sent: Wednesday, February 14, 2007 11:55 AM
To: Shiley, Michael; Tom Griffin
Cc: 'Mcquate, Glenn'; 'jimbill_harvey@acordia.com'; Anita Gilliam; Philippides, Thomas;
Ford, Brian; Horner, Harry
Subject: RE: AIG Cross Collateralization Agreement

Tom, this is a very serious issue here and will be addressed by this Friday, February
16th.  One we receive from United the signed cross-collateralization agreement or AIG will
send out a bill for the amount of the current Letter of Credit.  We have attempted
numerous times to resolve issues that you and/or United may have but, our attempts have
failed.

Tom, we value our relationship with you and United but, in this situation we MUST have the
signed cross-collateralization agreement  - PERIOD.


Regards
Harry



Harry Horner
Senior Vice President
AIG Global Energy Casualty
215-255-6258 - Phone
215-255-6542 - Fax
215-519-8974 - Cell
harry.horner@aig.com

-----Original Message-----
From: Shiley, Michael
Sent: Wednesday, February 14, 2007 11:35 AM
To: 'Tom Griffin'; Horner, Harry
Cc: Mcquate, Glenn; jimbill_harvey@acordia.com; Anita Gilliam
Subject: RE: AIG Cross Collateralization Agreement

Tom, as per my phonemail message, we need this cross-collateralization agreement by this
Friday.  In speaking to our Chief Credit Officer, Tom Philippides today, he advised that
he never received a call on the specific issues raised by Anita in her e-mail to you dated
1/25/07. He also confirmed that this is AIG's standard CC agreement that all insured's
that provide cross-collateralization, sign without modification. Finally, United, is our
only insured that has a cross-collateralization agreement.  Please call me today so we can
discuss.  Thanks.

1

Mike Shiley
Assistant Vice President
AIG Global Marine and Energy
1375 E. 9th St., Suite 3000
Cleveland, OH 44114
phone  (216) 479-8948
fax    (216) 696-2842


-----Original Message-----
From: Tom Griffin [mailto:TGriffin@unitedco.net]
Sent: Wednesday, February 14, 2007 9:43 AM
To: Shiley, Michael
Cc: Mcquate, Glenn; jimbill_harvey@acordia.com; Anita Gilliam
Subject: RE: AIG Cross Collateralization Agreement
Importance: High

Mike: We have major problems with it in present form as discussed before.Glen has been
made aware of our concerns & I could not envision anyone signing such a document  with the
evergreen wording in present form. I have discussed with other coal co's who have similar
deals with AIG & none say they have the wording that gives us concern.We very much want to
work with you on this but there needs to be some consideration on AIG's part in an effort
to resolve this.I have been a very big customer of AIG's for years & have paid
SIGNIFICIANT $ to various AIG entities resulting in a VERY PROFITABLE  book of business
for your companies. We have always worked very well together whether it be in London thru
LEX or domestically thru National Union ect. The United Co is a very profitable company
which back-stops all UCC obligiations in this program thus I would assume AIG could
accommodate our  concerns in this area.Thank you in advance for all of your efforts on
this.-TDG


Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

-----Original Message-----
From: Shiley, Michael [mailto:Michael.Shiley@AIG.com]
Sent: Wednesday, February 14, 2007 9:14 AM
To: Tom Griffin
Cc: 'Glenn McQuate'
Subject: RE: AIG Cross Collateralization Agreement

Tom, it is imperative that we have this cross-collateralization agreement in hand by this
Friday.

Mike Shiley
Assistant Vice President
AIG Global Marine and Energy
1375 E. 9th St., Suite 3000
Cleveland, OH 44114
phone  (216) 479-8948
fax    (216) 696-2842


-----Original Message-----
From: Mcquate, Glenn [mailto:Glenn_Mcquate@wellsfargois.com]
Sent: Tuesday, February 13, 2007 8:24 PM
To: tgriffin@ucbristol.com
Cc: agilliam@unitedco.net; Harvey, Jimbill; Michael.Shiley@AIG.com
Subject: AIG Cross Collateralization Agreement

Tom,

Following up on my voice mail message.

AIG would like to have a conference call with Anita and yourself to discuss your issues with the cross collateral agreement.

Please let me know Anita and your availibility either tomorrow or Thursday.

I appreciate your assistance.

Glenn
----------------------------
Glenn W. McQuate CPCU,ARM
Senior Vice President

276.619.6055  Office
276.676.0152  Fax
276.594.8187  Mobile

3

# EXHIBIT H

## Pete Lunati

From:          Tom Griffin [TGriffin@unitedco.net]
Sent:          Wednesday, April 04, 2007 10:08 AM
To:            Pete Lunati
Subject:       FW: AIG Cross Collateralization Agreement


Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

-----Original Message-----
From: Tom Griffin
Sent: Thursday, February 15, 2007 8:41 AM
To: 'jimbill_harvey@acordia.com'
Subject: FW: AIG Cross Collateralization Agreement

 JB: see Below- Our attorneys say  NO to agreement as it now stands .
Were you able to get AIG to back off Fri. deadline as discussed last night? I really hate
to see all of this come unraveled because of a couple of sentences in the agreement & AIG
total  lack of flexibility to address our concerns.We have other options to this but I
would really like to keep current program in place. We are willing to try to work
something out if AIG will be reasonable -See Anita's suggested changes to Paragraph 3-
below & if they back off Fri. deadline. Please provide an answer to these 2  issues ASAP


Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

-----Original Message-----
From: Anita Gilliam
Sent: Wednesday, February 14, 2007 6:23 PM
To: Tom Griffin; Brian Sullivan; Kenny Dockery
Subject: RE: AIG Cross Collateralization Agreement

Okay.  Just trying to come up with some language that might be acceptable to us.  Can't
recommend we sign the agreement as it currently stands.

This wireless message sent via Xpress Mail with GoodLink.
www.cingular.com

 -----Original Message-----
From:     Tom Griffin
Sent: Wednesday, February 14, 2007 06:17 PM Eastern Standard Time
To:   Anita Gilliam; Brian Sullivan; Kenny Dockery
Subject:    RE: AIG Cross Collateralization Agreement

Anita: I like your thinking but AIG advises NO CHANGES IN WORDING.TAKE IT OR LEAVE IT.That
is why I just sent you an email just mins. ago detailing our other option on this.AIG

                                        1

advises we are ONLY coal that has the cross collateral agreement  as all others are
required to write policy in name of parent co.If we could agree to this it would eliminate
need for the entire cross collateral wording. Brian has some concerns with this & I do as
well but @ end of day UC is on all of it anyway thru LOC's & parental guarantees.They will
not back off & they understand consequences for their actions. JimBill is talking with NYC
dudes as we speak to see if they can over ride Cleveland & give us another week to work out
but he feels they will hang tight.-just like they did with our Horizon deal.-TDG

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

-----Original Message-----
From: Anita Gilliam
Sent: Wednesday, February 14, 2007 5:56 PM
To: Tom Griffin; Brian Sullivan; Kenny Dockery
Subject: RE: AIG Cross Collateralization Agreement

Tom, Brian, and Kenny--

        What if we suggest to AIG that Paragraph 3 of the Cross-Collateralization Agreement
be modified to read something along the following lines:

"In the event the Sapphire Security or United Security is reduced to an amount that
Company, at its sole discretion, contends is insufficient to adequately permit cross
collateralization of the Sapphire Obligations or United Obligations, United will, to the
extent required by the terms of the United Obligations, procure for the benefit of the
Company acceptable collateral to cover the Sapphire Obligations or United Obligations, as
applicable.  In the event United divests itself of Sapphire, then United shall not be
responsible for any liabilities of Sapphire unless otherwise agreed in the documentation
relating to said divestiture."

Anita

-----Original Message-----
From: Tom Griffin
Sent: Wednesday, February 14, 2007 5:35 PM
To: Anita Gilliam; Brian Sullivan; Kenny Dockery
Subject: FW: AIG Cross Collateralization Agreement
Importance: High




Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

-----Original Message-----
From: Shiley, Michael [mailto:Michael.Shiley@AIG.com]
Sent: Wednesday, February 14, 2007 5:30 PM
To: Tom Griffin; Horner, Harry
Cc: Mcquate, Glenn; jimbill_harvey@acordia.com
Subject: RE: AIG Cross Collateralization Agreement

Tom, we are holding firm with the Friday deadline, but I did get some clarification from

2

Tom Philippides to address your concern over the clause involving the future sale of Sapphire. 

Should United sell Sapphire, prior to the consummation of the sale, United would need to provide AIG with a copy of the sale and purchase agreement, which would include a specific section addressing the historical liabilities of Sapphire.  Below are the 2 scenarios:

1) United maintains all historical liabilities and will be responsible for all losses and collateral.

2) The company purchasing Sapphire assumes all historical liabilities of Sapphire, and would execute an assumption agreement and will be obligated to perform all terms and conditions of the Premium Payment Agreement previously signed by both United and AIG.  The company assuming liabilities would then post collateral for these assumed liabilities, at which time, AIG will adjust the security currently held under United's name, to eliminate the Sapphire reserves.

Please have Anita review and advise if you will be executing the cross-collateralization agreement to meet the Friday deadline.

Mike Shiley
Assistant Vice President
AIG Global Marine and Energy
1375 E. 9th St., Suite 3000
Cleveland, OH 44114
phone  (216) 479-8948
fax      (216) 696-2842


-----Original Message-----
From: Tom Griffin [mailto:TGriffin@unitedco.net]
Sent: Wednesday, February 14, 2007 12:34 PM
To: Michael.Shiley@AIG.com
Cc: Mcquate, Glenn; jimbill_harvey@acordia.com
Subject: FW: AIG Cross Collateralization Agreement
Importance: High


Mike: Can we put off discussions between Anita & your attorney until next week? See below. You & I can talk today-this afternoon about all of this. I do not know where JB or Glenn are as they are traveling.Thanks-TDG

Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net

-----Original Message-----
From: Anita Gilliam
Sent: Wednesday, February 14, 2007 10:12 AM
To: Tom Griffin
Subject: RE: AIG Cross Collateralization Agreement

Tom--

     I saw Glenn's e-mail asking for a conference call on this today or tomorrow.  I'm full time on our upcoming mediation until it's over next week. That should be wrapped up on Tuesday, or Wednesday at the latest.  Is there any way this can wait until next week--Wednesday or Thursday?  I'll be out of town on business again on Friday next week.

hanks,
Anita

$E_{NC}$

-----Original Message-----
From: Tom Griffin
Sent: Wednesday, February 14, 2007 9:43 AM
To: 'Shiley, Michael'
Cc: 'Mcquate, Glenn'; Jimbill Harvey (jimbill_harvey@acordia.com); Anita Gilliam
Subject: RE: AIG Cross Collateralization Agreement
Importance: High

Mike: We have major problems with it in present form as discussed before.Glen has been made aware of our concerns & I could not envision anyone signing such a document  with the evergreen wording in present form. I have discussed with other coal co's who have similar deals with AIG & none say they have the wording that gives us concern.We very much want to work with you on this but there needs to be some consideration on AIG's part in an effort to resolve this.I have been a very big customer of AIG's for years & have paid SIGNIFICANT $ to various AIG entities resulting in a VERY PROFITABLE  book of business for your companies. We have always worked very well together whether it be in London thru LEX or domestically thru National Union ect. The United Co is a very profitable company which back-stops all UCC obligiations in this program thus I would assume AIG could accommodate our  concerns in this area.Thank you in advance for all of your efforts on this.-TDG


Thomas D. Griffin,
Vice President of Risk Management,
The United Company

Phone: (276) 645-1416
Mobile: (423) 534-8352
Fax: (276) 645-1404
email: tgriffin@unitedco.net
-----Original Message-----
From: Shiley, Michael [mailto:Michael.Shiley@AIG.com]
Sent: Wednesday, February 14, 2007 9:14 AM
To: Tom Griffin
Cc: 'Glenn McQuate'
Subject: RE: AIG Cross Collateralization Agreement

Tom, it is imperative that we have this cross-collateralization agreement in hand by this Friday.

Mike Shiley
Assistant Vice President
AIG Global Marine and Energy
1375 E. 9th St., Suite 3000
Cleveland, OH 44114
phone  (216) 479-8948
fax    (216) 696-2842


-----Original Message-----
From: Mcquate, Glenn [mailto:Glenn_Mcquate@wellsfargois.com]
Sent: Tuesday, February 13, 2007 8:24 PM
To: tgriffin@ucbristol.com
Cc: agilliam@unitedco.net; Harvey, Jimbill; Michael.Shiley@AIG.com
Subject: AIG Cross Collateralization Agreement

Tom,

Following up on my voice mail message.

AIG would like to have a conference call with Anita and yourself to discuss your issues with the cross collateral agreement.

lease let me know Anita and your availibility either tomorrow or Thursday.

I appreciate your assistance.

4

Glenn
--------------------------
Glenn W. McQuate CPCU,ARM
Senior Vice President

276.619.6055  Office
276.676.0152  Fax
276.594.8187  Mobile

ENC

# EXHIBIT I



# UNDERWRITERS

Jack D. Stewart                                           March 20, 2007
Executive Vice President


Mr Jim Bill Harvey
Senior Managing Vice President
Acordia
P.O. Box 1567
Abington, VA 24210

RE: United Coal Company LLC, et al

Dear Jim Bill:

As I'm sure you are aware, we have replaced the current AIG Workers' Compensation contract with one from Old Republic. I'm sure Tom Griffin has informed you of this, at least informally, and asked me to write you directly to bring you up-to-date on these actions

Enclosed is a copy of a binder from Old Republic evidencing this coverage. The certificates have been sent to the workers' compensation authorities in both Virginia and Kentucky to affect this coverage effective November 1, 2006.

With this evidence of coverage in place from Old Republic, Tom Griffin and United is requesting the return of the associated letters of credit and premium for the period of time beginning November 1, 2006. I think that you may know that Tom is out of the city at this time but will be returning on Thursday. I'm sure he will be in contact with you concerning these issues

Underwriters Safety & Claims will be taking over all claim service with claims with dates of occurrence after November 1, 2006  Gary Gilmour in my office will be contacting you very soon about the transfer of the current files to our office in Big Stone Gap, VA  Meanwhile, any new claim that is reported will be reported to our office here in Louisville

Jim Bill, there may be other issues to handle. If so, I will be in touch with you by telephone.

                                          Very truly,

                                          Jack D. Stewart
                                          Executive Vice President


mlt

cc:    Gary Gilmour
       Tom Griffin
       Gary Mongilutz

**ACORD INSURANCE BINDER**

DATE 03/16/2007

THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.

| PRODUCER | | COMPANY | BINDER # |
|---|---|---|---|
| | PHONE (A/C, No, Ext): | OLD REPUBLIC INSURANCE COMPANY | POLICY MDC 617777 02 |
| UNDERWRITERS SAFETY & CLAIMS | FAX (A/C, No): | | |
| 1700 EAST POINT PARKWAY | | | |
| LOUISVILLE, KY 40223 | | | |

| | | DATE EFFECTIVE | TIME | | DATE EXPIRATION | | |
|---|---|---|---|---|---|---|---|
| | | 11/01/2006 | 12:00 | X AM / PM | 11/01/2007 | X 12:01 AM / NOON |

CODE: ____ SUB CODE: ____

THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #:

INSURED
UNITED COAL LLC ET AL
1005 OLEN MAY AVENUE
BRISTOL, VA 34201

DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location)

### COVERAGES
### LIMITS

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY** CAUSES OF LOSS □ BASIC □ BROAD □ SPEC | | | | |
| **GENERAL LIABILITY** □ COMMERCIAL GENERAL LIABILITY □ CLAIMS MADE □ OCCUR | | EACH OCCURRENCE | | $ |
| | | MED EXP (Any one person) | | $ |
| | | PERSONAL & ADV INJURY | | $ |
| | | GENERAL AGGREGATE | | $ |
| | RETRO DATE FOR CLAIMS MADE: | PRODUCTS - COMP/OP AGG | | $ |
| **AUTOMOBILE LIABILITY** □ ANY AUTO □ ALL OWNED AUTOS □ SCHEDULED AUTOS □ HIRED AUTOS □ NON-OWNED AUTOS | | COMBINED SINGLE LIMIT | | $ |
| | | BODILY INJURY (Per person) | | $ |
| | | BODILY INJURY (Per accident) | | $ |
| | | PROPERTY DAMAGE | | $ |
| | | MEDICAL PAYMENTS | | $ |
| | | PERSONAL INJURY PROT | | $ |
| | | UNINSURED MOTORIST | | $ |
| **AUTO PHYSICAL DAMAGE** DEDUCTIBLE □ ALL VEHICLES □ SCHEDULED VEHICLES □ COLLISION □ OTHER THAN COLL | | ACTUAL CASH VALUE | | |
| | | STATED AMOUNT | | $ |
| | | OTHER | | |
| **GARAGE LIABILITY** □ ANY AUTO | | AUTO ONLY - EA ACCIDENT | | $ |
| | | OTHER THAN AUTO ONLY: | | |
| | | EACH ACCIDENT | | $ |
| | | AGGREGATE | | $ |
| **EXCESS LIABILITY** □ UMBRELLA FORM □ OTHER THAN UMBRELLA FORM | | EACH OCCURRENCE | | $ |
| | | AGGREGATE | | $ |
| | RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | | $ |
| **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** | | X WC STATUTORY LIMITS | | |
| | | E.L. EACH ACCIDENT | | $ 1,000,000 |
| | | E.L. DISEASE - EA EMPLOYEE | | $ 1,000,000 |
| | | E.L. DISEASE - POLICY LIMIT | | $ 1,000,000 |
| **SPECIAL CONDITIONS / OTHER COVERAGES** | | FEES | | $ |
| | | TAXES | | $ |
| | | ESTIMATED TOTAL PREMIUM | | $ |

### NAME & ADDRESS

| | □ MORTGAGEE □ LOSS PAYEE □ LOAN # | □ ADDITIONAL INSURED |
|---|---|---|
| | AUTHORIZED REPRESENTATIVE | |

*Robert A. Lloyd*   3-16-07

ACORD 75 (2001/08)          NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE          © ACORD CORPORATION 1993

# CONDITIONS

This Company binds the kind(s) of insurance stipulated on the reverse side. The insurance is subject to the terms, conditions and limitations of the policy(ies) in current use by the Company.

This binder may be cancelled by the insured by surrender of this binder or by written notice to the Company stating when cancellation will be effective. This binder may be cancelled by the Company by notice to the insured in accordance with the policy conditions. This binder is cancelled when replaced by a policy. If this binder is not replaced by a policy, the Company is entitled to charge a premium for the binder according to the Rules and Rates in use by the Company.

## Applicable in California

When this form is used to provide insurance in the amount of one million dollars ($1,000,000) or more, the title of the form is changed from "Insurance Binder" to "Cover Note".

## Applicable in Delaware

The mortgagee or Obligee of any mortgage or other instrument given for the purpose of creating a lien on real property shall accept as evidence of insurance a written binder issued by an authorized insurer or its agent if the binder includes or is accompanied by: the name and address of the borrower; the name and address of the lender as loss payee; a description of the insured real property; a provision that the binder may not be cancelled within the term of the binder unless the lender and the insured borrower receive written notice of the cancellation at least ten (10) days prior to the cancellation; except in the case of a renewal of a policy subsequent to the closing of the loan, a paid receipt of the full amount of the applicable premium, and the amount of insurance coverage.

Chapter 21 Title 25 Paragraph 2119

## Applicable in Florida

Except for Auto insurance coverage, no notice of cancellation or nonrenewal of a binder is required unless the duration of the binder exceeds 60 days. For auto insurance, the insurer must give 5 days prior notice, unless the binder is replaced by a policy or another binder in the same company.

## Applicable in Nevada

Any person who refuses to accept a binder which provides coverage of less than $1,000,000.00 when proof is required: (A) Shall be fined not more than $500.00, and (B) Is liable to the party presenting the binder as proof of insurance for actual damages sustained therefrom.

ACORD 75 (3/91/91)

**ACORD™ CANCELLATION REQUEST / POLICY RELEASE**

DATE (MM/DD/YY) 05/07/2007

PRODUCER   Phone (A/C, No, Ext): 304-327-3421

ACORDIA OF WV-BLUEFIELD
302 FEDERAL STREET
P O BOX 1430
BLUEFIELD, WV  24201

COMPANY NAME AND ADDRESS                NAIC CODE:
AIG - AMERICAN INTERNATIONAL SOUTH INSURANCE
COMPANY

CODE:                SUB CODE:

POLICY TYPE   WORKERS COMPENSATION

INSURED NAME AND ADDRESS

UNITED COAL COMPANY
P O BOX 1280
BRISTOL, VA  24203

CANCELLED POLICY INFORMATION

POLICY NUMBER   7209431

| EFFECTIVE DATE AND HOUR OF CANCELLATION | CANCELLATION DATE | TIME | |
|---|---|---|---|
| | 11/1/06 | 12:01 | X AM / PM |

| POLICY TERM | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|
| | 11/01/2006 | 11/01/2007 |

CANCELLATION REQUEST (Policy attached)   | X | POLICY RELEASE (Complete Statement Section Below)

**POLICY RELEASE STATEMENT**

The undersigned agree that:

The above referenced policy is lost, destroyed or being retained.

No claims of any type will be made against the Insurance Company, its agents or its representatives, under this policy for losses which occur after the date of cancellation shown above.

Any premium adjustment will be made in accordance with the terms and conditions of the policy.

_Barbara L. Brown_   11-1-06          _[signature]_   11-01-06
WITNESS                     DATE     SIGNATURE OF NAMED INSURED         DATE

WITNESS                     DATE     SIGNATURE OF NAMED INSURED         DATE

| LIEN HOLDER | MORTGAGEE | LOSS PAYEE | AUTHORIZED SIGNATURE | TITLE | DATE |

FOR AGENCY/COMPANY USE

| LIEN HOLDER | MORTGAGEE | LOSS PAYEE | AUTHORIZED SIGNATURE | TITLE | DATE |

**REASON FOR CANCELLATION**

| X | NOT TAKEN | X | OTHER (identify) | REPLACED |
REQUESTED BY INSURED
REWRITTEN
COMPANY   OLD REPUBLIC INSURANCE COMPANY

POLICY NUMBER   11108-07          EFFECTIVE DATE   11/1/06

REMARKS

**METHOD OF CANCELLATION**

| X | FLAT |
| | SHORT RATE |
| | PRO RATA |

FULL TERM PREMIUM   $
UNEARNED FACTOR
RETURN PREMIUM   $

MINIMUM CANCELLATION EARNED PREMIUM (if any)

New York Only: If you do not keep your auto insurance in force during the entire registration period, your motor vehicle registration will be suspended. If your vehicle is still uninsured after 90 days, your driver's license will be suspended. To avoid these penalties, you must surrender your registration certificate and plates before your insurance expires. By law, we must report the termination of auto insurance coverage to the Department of Motor Vehicles.

NAME AND ADDRESS

REQUEST/RELEASE DISTRIBUTION

| INSURED | LOSS PAYEE |
| MORTGAGEE | LIEN HOLDER |
| COMPANY | FINANCE COMPANY |

PRODUCERS SIGNATURE                     DATE

ACORD 35 (1/97)                          © ACORD CORPORATION 1985

# EXHIBIT J

ERNIE FLETCHER
GOVERNOR

TERESA J. HILL
SECRETARY



ENVIRONMENTAL AND PUBLIC
PROTECTION CABINET
OFFICE OF LEGAL SERVICES
WORKERS' CLAIMS LEGAL DIVISION
657 CHAMBERLIN AVENUE
FRANKFORT KENTUCKY 40601
TELEPHONE (502) 564-5550
FAX (502) 564-0681
www.kentucky.gov

May 10, 2007

AIG
American International South Insurance Co.
427 South 4th Street, Suite 400
P. O. Box 70069
Louisville, Kentucky 40202

Dear Sir or Madam:

It has come to the attention of the Kentucky Office of Workers' Claims that an employer, United Coal Company LLC, has obtained workers' compensation coverage from Old Republic effective November 1, 2006. After placing coverage with Old Republic, United Coal requested that their policy with your insurance company be cancelled for the period beginning November 1, 2006.

Pursuant to KRS 342.340(2) and 803 KAR 25:175, AIG is required to file a notice of cancellation with the Office of Workers' Claims. If you fail to comply with these requirements, your company may be subject to a civil penalty pursuant to KRS 342.990(7)(c). Please immediately file the appropriate documents with our agency to avoid a potential civil penalty. Thank you for your immediate attention to this matter.

Sincerely,

Carla H. Montgomery
General Counsel

CHM/mbm

Kentucky
UNBRIDLED SPIRIT

KentuckyUnbridledSpirit.com                              An Equal Opportunity Employer M/F/D

# EXHIBIT K

# The United Company

1005 Glenway Avenue
Bristol, VA  24201

(276) 645-1416 – Tel
(276) 645-1404– Fax
(423) 534-8352– Cell
tgriffin@unitedco.net

June 7, 2007

Mr. Thomas Morelli
President
AIG Global Marine & Energy
AIG Global Energy Casualty
175 Water Street
New York, NY  10038

RE:       The United Company
          United Coal Company
          Policy #:     WC 72094
          Effective:    11-1-06
          Insurer:      American International South Insurance Company
          No Claims Letter

Dear Tom:

I appreciate that you and Mark Pasko called Pete Lunati on May 30, 2007.  The conversation was most helpful.  An acceptable No Claim letter format has been requested from you and Mark Pasko on a number of occasions.  Since United has not been provided the No Claim letter terms of information, this letter is United's agreement.

As previously stated, Old Republic Insurance Company has agreed to assume all liability for any claims from November 1, 2006 forward.  The States of Virginia and Kentucky have agreed to accept Old Republic Insurance Company as the insurer of record for all workers compensation and Black Lung claims occurring on or after November 1, 2006.  United Coal Company does not intend to make any claim under the terms of the AIG policy noted above.  AIG Global Energy has paid no claims, as Old Republic has effectively agreed to accept all claims from November 1, 2006 forward.

United looks forward to receiving confirmation as to AIG accepting this No Claim letter in an effort to resolve the requested cancellation.

Best regards,

Thomas D. Griffin
Vice President, Risk Management

# CHARTER
## *INSURANCE & CONSULTING, INC.*

P. O. Box 421159
Atlanta, GA 30342
(404) 256-7900
(404) 256-9257 FAX
(404) 513-9700 Cell
E-mail address: pjl@charterenergy.com
Web Site: www.charterenergy.com

June 7, 2007

Mr. Thomas Morelli
President
AIG Global Marine & Energy
AIG Global Energy Casualty
175 Water Street
New York, NY  10038

RE:         The United Company / United Coal Company
            Insurer:     American International South Insurance Company
            Policy #:    WC 72094
            Effective:   11-1-06
            No Claims Letter

Dear Tom:

The enclosed letter from Tom Griffin, Risk Manager for The United Company, should be the last
area of concern regarding the cancellation of the captioned workers comp policy. The United
Company had requested an acceptable format to be used as a no claims letter, but since they have
not received a response to that request, trust that the attached letter will be accepted.

In United's efforts to have the policy cancelled flat as requested in the Acord 35 Cancellation
form sent to AIG on May 7, 2007, they contacted Mike Foglio of AICCO, Inc.  Mr. Foglio
advised that as per the financing agreement contract, they merely act as the banking entity and
take their direction from the insurer.  Since the cancellation request had been tendered to AIG
Global Energy some time ago, he was surprised that instruction to return premium following
policy cancellation processing had not been received.  When the instructions are received from
AIG, AICCO will process the return premium payment.

The United Company's Chairman has been monitoring this issue since late February.  The Risk
Manager has been requesting cancellation in letters since February and forwarded the
Cancellation Request form 30 days ago.

United would like to maintain a long term relationship with AIG/Lexington, but at present there
is a hold on all AIG insurance placements until this can be resolved.  Charter Insurance is not the

broker on this policy, but since we do place a number of AIG/Lexington policies for them, United has requested our assistance in bringing this to resolution. The current broker has not chosen to become involved in resolving this matter.

We would hope that you will accept this no claims letter as confirmation that AIG will not be responsible for any claims from November 1, 2006 moving forward since coverage was replaced by Old Republic. This needs to come to resolution now so that business can proceed and the relationships can be resumed.

We look forward to receiving your decision as soon as possible.

Sincerely,


Peter J. Lunati

cc:    Mark T. Pasko
       Division Counsel AIG
       175 Water Street, 15th Floor
       New York, NY 10038

       Mike Foglio
       AICCO, Inc.
       101 Hudson Street, Floor 33
       Jersey City, NJ 07302

# EXHIBIT L

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

**The United Company**
1005 Glenway Avenue
Bristol, VA 24201-3473

**Sapphire Coal Company**
147 Big Blue Blvd.
Whitesburg, KY 41858

**Wellmore Coal Company**
P.O. Box 458
Big Rock, VA 24603-0458

Plaintiffs

- vs. -

**American International Group, Inc. a/k/a**
**American International South Insurance**
**Company**
70 Pine Street
New York, New York 10270

**Imperial A.I. Credit Companies d/b/a**
**A.I. Credit Corporation**
101 Hudson Street
Jersey City, New Jersey 07302

**National Union Fire Insurance Company of**
**Pittsburgh, Pennsylvania**
70 Pine Street
New York, New York 10270

Defendants

**COMPLAINT**

**JURY DEMAND**

## INTRODUCTION

This is a dispute about workers' compensation insurance coverage which was never provided and does not presently exist. The insurance company, however, continues to wrongfully withhold the release of more than $3 million of its putative policyholder's money and is demanding additional premium payments.

Now come Plaintiffs, The United Company ("United") and its affiliate companies Sapphire Coal Company ("Sapphire") and Wellmore Coal Company ("Wellmore") (collectively "Plaintiffs"), by and through Counsel, for their Complaint against Defendants American International Group, Inc., a/k/a/ American International South Insurance Company, the financing arm of American International Group, Inc., known as Imperial A.I. Credit Companies d/b/a A.I. Credit Corporation ("A.I. Credit"), and National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union/AIG") (a member company of American International Group, Inc.) (collectively "AIG") which state and aver as follows:

## THE PARTIES

1.     United is a Virginia corporation that holds investments in the coal and energy business. United is the majority owner of United Coal Company, LLC, a Virginia limited liability company ("UCC"). UCC mines and sells high grade steam and metallurgical coals through its subsidiary companies in Virginia, Kentucky, and West Virginia, and has its principal place of business in the Commonwealth of Virginia.

2.     UCC is comprised of four subsidiary companies: Carter Roag Coal Company, Pocahontas Coal Company, Sapphire, and Wellmore.

3.     Sapphire is a subsidiary of UCC, and is engaged in the coal mining business in the Commonwealth of Kentucky, specifically in Letcher County.

2

4.      Wellmore is a subsidiary of UCC and is engaged in the coal mining business in the Commonwealth of Virginia.

5.      American International Group, Inc. a/k/a American International South Insurance Company is, upon information and belief, a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 70 Pine Street, New York, New York 10270, and which transacts business throughout the United States, including in the Commonwealth of Kentucky.

6.      A.I. Credit is, upon information and belief, a member company of American International Group, Inc. and provides American International Group, Inc.'s premium financing services. A. I. Credit transacts business throughout the United States, including in the Commonwealth of Kentucky, and has its principal place of business located at 101 Water Street, Jersey City, New Jersey 07302.

7.      National Union is, upon information and belief, a subsidiary company of American International Group, Inc.  It transacts business throughout the United States, including in the Commonwealth of Kentucky, and has its principal place of business also located at 70 Pine Street, New York, New York 10270.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) because complete diversity exists and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9.      This Court has personal jurisdiction over AIG because AIG, its subsidiaries and agents transact business in Kentucky, providing insurance and related services in this state.

10.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391, as a substantial part of the events and injuries giving rise to this cause of action, including determinations by duly authorized state insurance regulators, occurred in this judicial district.

## FACTS COMMON TO ALL COUNTS

11.    In 2004 and 2005, AIG provided workers' compensation coverage to Sapphire and Wellmore.

12.    On or about September 2006 and based, in part, on their past favorable claims history, Plaintiffs began negotiations with AIG by requesting information on workers' compensation coverage for their business, specifically for their coal operations in Kentucky and Virginia, through UCC's insurance brokers, Acordia West Virginia.  The coverage anticipated would have involved a significant change from previous coverage obtained from AIG and significantly increased the deductible applicable to the coverage.  Such anticipated coverage required considerable negotiation and reduced the premiums.

13.    On or about November 14, 2006, AIG sent a Payment Agreement to Plaintiffs and sought a $626,000 down payment on the workers' compensation policy premium and $2,323,000 in a letter of credit from United in anticipation of completing a high deductible workers' compensation policy as the parties had been discussing.  A copy of the Payment Agreement is attached hereto, made a part hereof for all purposes and is labeled Exhibit A for identification.  The letter of credit from United was intended by AIG to cover anticipated workers' compensation claims that would be made by employees of Sapphire and Wellmore due to incidents occurring during the period of November 1, 2006 through October 31, 2007.

14.    On or about November 17, 2006, Acordia West Virginia sent Plaintiffs a "recap" of an insurance coverage proposal from AIG.  The proposal failed to include certain essential terms of the agreement, including the so-called proposed cross-collateralization

4

agreement (the "Proposed Cross-Collateralization Agreement"). A copy of such insurance coverage proposal is attached hereto, made a part hereof for all purposes and is labeled Exhibit B for identification. See also the Index of Exhibits attached hereto, including Exhibits C and D, respectively, an insurance policy "binder" describing the proposed workers' compensation coverage prepared by AIG's Les Lappe and dated November 1, 2006 and the putative insurance policy with number: WC 720-94-31 which was included with an Acordia "Insurance Program Policy Kit" dated January 19, 2007. Exhibits C and D are made a part hereof for all purposes.

15.     Upon information and belief, AIG sent the Proposed Cross-Collateralization Agreement to Plaintiffs in January 2007 and requested Plaintiffs' signature on the document. The Proposed Cross-Collateralization Agreement indicated that the terms would be effective going back to November 1, 2006, and that the terms applied between AIG, and Plaintiffs. A copy of said **unsigned** Proposed Cross-Collateralization Agreement is attached hereto, made a part hereof for all purposes and labeled Exhibit E for identification. The Proposed Cross-Collateralization Agreement was never signed or agreed to by Plaintiffs.

16.     On or about December 31, 2006, without having agreed to any cross-collateralization agreement and under the expectation that the parties would negotiate in good faith regarding the terms of the insurance policy contract, including the Proposed Cross-Collateralization Agreement, Plaintiffs provided AIG with Letters of Credit in the amount of $2,323,000.

17.     On or about December 31, 2006, without having agreed to any cross-collateralization agreement and under the expectation that the parties would negotiate in good faith regarding the terms of the insurance policy contract, including the Proposed Cross-

Collateralization Agreement, Plaintiffs provided AIG with a premium payment in the amount of $626,000.

18.    To date, Plaintiffs have paid AIG the initial $626,000 premium payment, as well as two subsequent additional payments of $258,363.44 for a total of $1,142,726.88 in premium payments.

19.    On or about January 25, 2007 Plaintiffs contacted AIG via e-mail and, among other things, stated that the terms of the Proposed Cross-Collateralization Agreement were unacceptable. A copy of said e-mail is attached hereto, made a part hereof for all purposes and labeled Exhibit F for identification.

20.    By e-mail dated February 14, 2007, a representative of AIG's Global Energy and Marine Department threatened in an email that AIG would call in United's Letter of Credit on February 16, 2007 if United did not accept the terms of AIG's Proposed Cross-Collateralization Agreement. A copy of said e-mail is attached hereto, made a part hereof for all purposes and labeled Exhibit G for identification.

21.    The February 14, 2007 e-mail was sent by AIG more than three months after the purported inception of the new AIG workers' compensation insurance program. In the e-mail, AIG's representative stated, "One [sic] we receive from United the signed [C]ross-[C]ollateralization Agreement or AIG will send out a bill for the amount of the current Letter of Credit . . . . Tom [Griffin, United's Vice President of Risk Management], we value our relationship with you and United but, in this situation we MUST have the signed Proposed Cross-Collateralization agreement – PERIOD" (emphasis in original).

22.    AIG's representative also told Plaintiffs that if Plaintiffs did not assent to the sign Proposed Cross-Collateralization Agreement, the coverage would revert to a full

manuscript program at much greater expense, negating the economic benefit of the deductible mechanisms that Plaintiffs had negotiated for months.

23.    Plaintiffs never agreed to the terms of the Proposed Cross-Collateralization Agreement and, thus, did not sign the document as requested by AIG.

24.    Because of AIG's threats, including, but not limited to, its statement that AIG would call in United's letter of credit and change the terms of the proposed workers' compensation policy to a full manuscript policy at a much higher premium, Plaintiffs sought alternative workers' compensation insurance coverage to protect their interests.  On March 16, 2007, Plaintiffs entered into an insurance agreement with Old Republic Insurance Company ("Old Republic"), whereby Old Republic provided workers' compensation coverage to Plaintiffs effective November 1, 2006.  Among other things, such insurance agreement rendered the proposed AIG insurance policy coverage unnecessary and redundant.

25.    By letter dated March 20, 2007, Plaintiffs (through Underwriters Safety & Claims, their broker on the Old Republic Policy ("Underwriters")) formally notified AIG of Plaintiffs' workers' compensation insurance agreement with Old Republic.  Such letter stated that Underwriters "will be taking over all claim service with claims with dates of occurrence after November 1, 2006."  Plaintiffs accordingly requested "the return of the associated letters of credit and premium for the period of time beginning November 1, 2006."  A copy of said letter is attached hereto, made a part hereof for all purposes and is labeled Exhibit H for identification.

26.    By letter dated April 19, 2007, Old Republic, to avoid any potential confusion and at Plaintiffs' request, sent notice to the Commonwealth of Virginia's Workers' Compensation Commission, informing the commission of Plaintiffs' insurance agreement with Old Republic as of the November 1, 2006 inception date.  A copy of said letter is attached

hereto, made a part hereof for all purposes and is labeled Exhibit I for identification. The stated purpose of this letter was "to remove any confusion the Virginia Workers Compensation Commission may have that duplicate coverage is in effect."

27.    A similar notification was provided to the United States Department of Labor.

28.    By letter dated April 24, 2007, Old Republic, to avoid any potential confusion and once again at Plaintiffs' request and pursuant to KRS § 342.340(2), sent notice to the Commonwealth of Kentucky's Office of Workers' Claims, informing the agencies of Plaintiffs' insurance agreement with Old Republic as of the November 1, 2006 inception date. A copy of said letter is attached hereto, made a part hereof for all purposes and is labeled Exhibit J for identification. The stated purpose of this letter was "to remove any confusion the Kentucky Office of Worker Claims may have that duplicate coverage is in effect."

29.    On or about May 10, 2007, the Commonwealth of Kentucky's Office of Workers' Claims, through its General Counsel, Carla H. Montgomery, issued a letter to AIG's Louisville, Kentucky office requiring AIG to file a notice of cancellation with the Office of Workers' Claims, effective November 1, 2006, or be subject to civil penalties under KRS § 342.990(7)(c). A copy of said letter from the Kentucky Office of Workers' Claims is attached hereto, made a part hereof for all purposes and labeled Exhibit K for identification. Specifically, such letter stated that "[p]ursuant to KRS § 342.340(2) and KAR § 25:175, AIG is required to file a notice of cancellation with the Office of Workers' Claims . . . . Please immediately file the appropriate documents with our agency to avoid a potential civil penalty."

30.    To date, AIG has not filed the necessary papers as directed by the Commonwealth of Kentucky.

8

31.     Upon information and belief, AIG has taken no steps to handle or otherwise manage any claims under the alleged workers' compensation insurance.

32.     AIG has, however, upon information and belief, wrongfully pursued a strategy to avoid a resolution, avoid a return of premium paid for insurance coverage which never existed, and improperly maintain a letter of credit posted by United, all in order to serve its own interests and enrich itself at the expense of Plaintiffs.

33.     Because, among other reasons, AIG failed to respond to the Kentucky Office of Workers' Claims and has failed to take reasonable steps to address these matters, on or about June 7, 2007, Plaintiffs provided AIG with a "No Claims Letter." Plaintiffs prepared and sent such letter at the request of AIG in a good faith attempt to resolve these matters and to further document that AIG had not paid any claims as of the date of the letter, and would likewise not be "on risk" for any claims thereafter. Plaintiffs took the added steps of providing AIG with full indemnity, to clarify and release AIG's potential liability for future claims possibly associated with the period between November 1, 2006 and March 16, 2007 (the time period between alleged inception of the AIG coverage and the date upon which Plaintiffs entered into an insurance agreement with Old Republic providing workers' compensation coverage retroactive to November 1, 2006). A copy of said No Claims Letter is attached hereto, made a part hereof for all purposes and labeled Exhibit L for identification.

34.     AIG sent a Notice of Intent to Cancel Insurance Policies dated July 10, 2007 to Plaintiffs. A copy of such document is attached hereto, made a part hereof for all purposes and labeled Exhibit M for identification.

35.     AIG does not face any potential claims or liability for the period between November 1, 2006 and March 16, 2007. No insurance policy contract was accepted and

9

finalized between Plaintiffs or any of them and AIG. This has been recognized and acknowledged by the Commonwealth of Kentucky.

36.     The present or known workers' compensation claims asserted against Sapphire and/or Wellmore during the period between November 1, 2006 and March 16, 2007 are mostly minor in nature, typically do not involve significant time off from work by claimants, and are all covered by Old Republic, not AIG.

37.     Even if, for the sake of argument, a valid workers' compensation insurance policy contract existed between Plaintiffs and AIG, which Plaintiffs deny, AIG does not have risk under the purported policy and any alleged contract fails for lack of consideration.

38.     In the alternative, even if, for the sake of argument, AIG accepted risk for a limited period pursuant to a valid workers' compensation insurance policy contract between Plaintiffs and AIG, which Plaintiffs deny:

(a)     AIG's failure to: (i) follow the directive of the Commonwealth of Kentucky, Office of Workers' Claims; (ii) avoid engaging in unfair trade practices; and (iii) avoid engaging in bad faith actions by refusing to address the matters discussed above appropriately, subjects AIG to sanctions and voids and negates any of AIG's potential defenses or counterclaims to Plaintiffs' allegations herein; and

(b)     AIG has been unjustly enriched and fundamental fairness and equity require that AIG disgorge all premium payments it received less any applicable cancellation penalties or pro-rated amounts; and

(c)     Fundamental fairness and equity require that AIG release any claim it asserts against Plaintiffs' collateral in the form of Letters of Credit.

### COUNT ONE
### Declaratory Judgment: No Contract Existed

39.     Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 38 above as if fully set forth herein, verbatim.

40.    AIG, an insurance company, was required to provide the purported insurance policy terms and conditions in their entirety in order to form a valid contract.

41.    AIG failed to provide essential terms of the policy (including the Proposed Cross-Collateralization Agreement) in a timely manner.

42.    AIG did not provide the Proposed Cross-Collateralization Agreement until more than two months after the purported insurance policy allegedly went into effect.

43.    Upon receipt of the Proposed Cross-Collateralization Agreement, Plaintiffs refused to sign the document and enter into a contract with AIG, as Plaintiffs never agreed to AIG's proposed terms.

44.    The Proposed Cross-Collateralization Agreement was a central element of the proposed workers' compensation insurance policy.  Without Plaintiffs' agreement to the Proposed Cross-Collateralization Agreement there was no meeting of the minds sufficient to form a valid insurance contract.

45.    In the alternative, AIG does not have risk under the purported insurance policy despite receiving Plaintiffs' down payment, premium payments and Plaintiffs' Letters of Credit.  Accordingly, any alleged insurance contract would fail for want of consideration.

46.    Wherefore, Plaintiffs seek a judicial declaration by the Court that there was no meeting of the minds and, therefore, no valid insurance contract between Plaintiffs and AIG reached for the period of November 1, 2006 through November 1, 2007.

47.    In the alternative, Plaintiffs seek a judicial declaration by the Court that there was no valid insurance contract between Plaintiffs and AIG for the period of November 1, 2006 through November 1, 2007, for want of consideration on the part of AIG.

11

## COUNT TWO
### Restitution Of The Insurance Premiums

48.     Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 47 above as if fully set forth herein, verbatim.

49.     There was no valid insurance contract between Plaintiffs, on the one hand, and AIG on the other, for the period of November 1, 2006 through November 1, 2007.

50.     Wherefore, Plaintiffs seek an order of restitution directing AIG immediately to return all premium payments and accrued interest to Plaintiffs.

51.     In the alternative, Plaintiffs seek an order of restitution directing AIG immediately to return a pro-rated portion of all premium payments and accrued interest to Plaintiffs to reflect the period (November 1, 2006 to March 16, 2007) that AIG insurance coverage allegedly was in effect.

## COUNT THREE
### Release of the Letter(s) of Credit

52.     Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 51 above as if fully set forth herein, verbatim.

53.     There was no valid insurance contract between Plaintiffs on the one hand, and AIG on the other, for the period of November 1, 2006 through November 1, 2007.

54.     In the above referenced No Claims Letter, Plaintiffs unilaterally have agreed to fully indemnify and release AIG with respect to any AIG potential liability for future workers' compensation claims possibly associated with the period between November 1, 2006 and March 16, 2007.

55.     Wherefore, Plaintiffs seek an order directing AIG immediately to release and return the Letter of Credit to Plaintiffs which Letter of Credit AIG wrongfully has failed to return.

## COUNT FOUR
### Unjust Enrichment

56.    Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 55 above as if fully set forth herein, verbatim.

57.    There was no valid insurance contract between Plaintiffs on the one hand, and AIG on the other, for the period of November 1, 2006 through November 1, 2007.

58.    In good faith, Plaintiffs made premium payments in anticipation of obtaining workers' compensation insurance coverage from AIG for the period of November 1, 2006 through November 1, 2007. Despite making premium payments, and negotiating with AIG towards a mutually acceptable workers' compensation insurance policy for the period of November 1, 2006 through November 1, 2007, the parties never finalized such a contract, and Plaintiffs never received the benefit of such a policy.

59.    AIG never assumed any risk and therefore never provided Plaintiffs with workers' compensation insurance coverage for the period of November 1, 2006 through November 1, 2007.

60.    AIG has been unjustly enriched by receiving the benefit of premium payments from Plaintiffs, while not providing insurance coverage or claims handling services to Plaintiffs.

61.    Wherefore, in conjunction with, or as an alternative to, restitution, Plaintiffs seek an award against AIG for a sum equal to the amount of premiums paid without receiving insurance coverage, including any interest accrued thereon in the amount in which AIG was unjustly enriched.

## COUNT FIVE
### Breach of the Duty of Good Faith and Fair Dealing

62.     Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 61 above as if fully set forth herein, verbatim.

63.     In the alternative, Plaintiffs plead as follows:   AIG, as an insurance provider, is required to act in good faith, cannot place its own interests above the interests of its policyholders, and must provide insurance coverage in an equitable and honest manner.

64.     The duty of good faith and fair dealing prevents AIG from taking any action which would deprive Plaintiffs of the benefits of any contract between AIG and Plaintiffs or to cause undue hardship to Plaintiff.

65.     AIG has pursued an improper strategy of delay designed to further its own interests improperly at the expense of Plaintiffs.

66.     Generally as an insurance company and in the event that the Court determines that a valid contract did exist between AIG and Plaintiffs, AIG owes a duty of good faith and fair dealing to Plaintiffs under applicable law, including, without limitation, KRS § 304.12-230.

67.     Generally and in the event that the Court determines that a valid contract did exist between AIG and Plaintiffs, AIG breached its duty of good faith and fair dealing under the laws of the Commonwealth of Kentucky as well as other states' laws in, among other things, the following respects:

   (a)     Failing to provide essential contract language prior to entering into an agreement with Plaintiffs;

   (b)     Refusing to negotiate in good faith regarding the Proposed Cross-Collateralization Agreement;

   (c)     Threatening a "take it or leave it" scenario while negotiating the terms of the Proposed Cross-Collateralization Agreement;

14

(d)    Refusing to cancel the purported policy as requested by Plaintiffs and directed by the Commonwealth of Kentucky's Department of Workers' Claims, pursuant to KRS § 342.880(7)(c);

(e)    Refusing to respond to or otherwise directly address the Commonwealth of Kentucky's stated concerns;

(f)    Failing to return unearned premiums;

(g)    Wrongfully failing to release the Letter(s) of Credit; and

(h)    Forcing Plaintiffs to resort to litigation in order to clarify the status of their relationship with AIG.

68.    Wherefore, Plaintiffs seek consequential and exemplary damages because of AIG's violation of the covenant of good faith and fair dealing and its wanton and reckless disregard for the right and property of others.

## COUNT SIX
### AIG Must Comply With Order Issued by Kentucky's Office of Workers' Claims

69.    Plaintiffs restate and incorporate by reference the allegations set forth in Paragraphs 1 through 68 above as if fully set forth herein, verbatim.

70.    AIG, as a corporation doing business in the Commonwealth of Kentucky, is required to adhere to the state's laws and regulations.

71.    The Commonwealth of Kentucky, through its Office of Workers' Claims, issued a directive on May 10, 2007, ordering AIG to file a notice of cancellation for its insurance policy with Plaintiffs, or be subject to civil penalties under KRS § 342.990(7)(c).

72.    AIG has failed to comply with such directive and has not filed a notice of cancellation of Plaintiffs' policy consistent therewith.

73.    Wherefore, Plaintiffs seek an order from the Court requiring AIG to comply with the Commonwealth of Kentucky's above directive.

15

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, The United Company, Sapphire Coal Company and Wellmore Coal Company, pray for judgment on all counts and seek relief as follows:

1.    With respect to the First Count, Plaintiffs seek a judicial declaration, pursuant to 28 USC § 2201 that because, among other reasons, Plaintiffs did not agree to the terms of the Proposed Cross-Collateralization Agreement, there was no meeting of the minds or acceptance, and thus no workers' compensation insurance policy agreement between Plaintiffs and AIG.  Furthermore, because no contract existed between the parties, Plaintiffs seek the immediate return of any and all funds exchanged between or withheld on behalf of the parties, including but not limited to insurance premiums paid (including any interest accrued at the prevailing statutory rate) and release of the Letter(s) of Credit.

2.    With respect to the Second Count, Plaintiffs seek an order against AIG immediately awarding Plaintiffs a sum equal to the amount of premiums paid, including any interest accrued at the prevailing statutory rate.

3.    With respect to the Third Count, Plaintiffs seek an order against AIG requiring the immediate release and return to Plaintiffs of the Letter(s) of Credit.

4.    With respect to the Fourth Count, Plaintiffs seek an order against AIG immediately awarding Plaintiffs a sum equal to the amount of premiums paid, including any interest accrued at the prevailing statutory rate.

5.    With respect to the Fifth Count Plaintiffs seek compensatory, statutory and exemplary damages in an amount to be proven at trial as well as immediate return of all premiums with interest and release and return of the Letter(s) of Credit.

6.    With respect to the Sixth Count, Plaintiffs seek an order from the Court requiring AIG immediately to comply with the Commonwealth of Kentucky's directive ordering

AIG to file a notice of cancellation as of November 1, 2006 to, among other things, clarify any

potential confusion AIG may have created or has sought to capitalize upon.

    7.    With respect to all counts, Plaintiffs respectfully request the following:

    (a)    A judgment directing AIG's immediate disgorgement of Plaintiffs' insurance premium payments (including any interest accrued);

    (b)    A judgment directing AIG's immediate release and return of Plaintiffs' $2,323,000 Letter(s) of Credit;

    (c)    Compensatory, statutory and exemplary damages in an amount to be established at trial;

    (d)    Costs and expenses of this action including reasonable attorney's fees as well as post and pre-judgment interest;

    (e)    A trial by jury of all issues triable of right by a jury; and

    (f)    All other relief such as this Court deems just and equitable.

March 7, 2008                Respectfully submitted,

                /s/ Samuel D. Hinkle IV
                Samuel D. Hinkle IV, Esq.
                Adam T. Goebel, Esq.
                STOLL KEENON OGDEN PLLC
                2000 PNC Plaza
                500 West Jefferson Street
                Louisville, KY 40202-2828
                Telephone: (502) 333-6000
                Facsimile: (502) 562-0909

                John G. Nevius, Esq., P.E.
                Greg Hansen, Esq.
                ANDERSON KILL & OLICK, P.C.
                1251 Avenue of the Americas
                New York, NY 10020
                Telephone: (212) 278-1000
                Facsimile: (212) 278-1733

                Attorneys for Plaintiffs

018133.129182/514097.1

17

## INDEX OF EXHIBITS

A.   Payment Agreement for Insurance and Risk Management Services between National Union Fire Insurance Company of Pittsburgh, Pa., et al. and The United Company dated November 14, 2006.

B.   Four-page "recap" of an insurance proposal dated November 17, 2006.

C.   Insurance policy "binder" describing the proposed workers' compensation coverage prepared by AIG's Les Lappe and dated November 1, 2006.

D.   Putative insurance policy with number: WC 720-94-31 included with an "Insurance Program Policy Kit" dated January 19, 2007.

E.   Proposed Cross-Collateralization Agreement between National Union and Plaintiffs to be effective November 1, 2006.

F.   String e-mail dated January 25, 2007 from Thomas Griffin, Vice President of Risk Management at The United Company to Glenn McQuate of Acordia West Virginia Re: "United/Sapphire [Proposed] Cross-Collateralization Agreement – Problems."

G.   String e-mail dated February 14, 2007 from Harry Horner, Senior Vice President of AIG Global Energy Casualty, to Mr. Griffin, Re: "AIG [Proposed] Cross-Collateralization Agreement."

H.   Letter dated March 20, 2007 from Jack Stewart, Executive Vice President of Underwriters Safety and Claims to Jim Bill Harvey, Senior Managing Vice President of Acordia, West Virginia, Re: "United Coal Company LLC, et al."

I.   Letter dated April 19, 2007 from Robert Lloyd, Assistant Vice President, Old Republic Insurance Company to Virginia Workers Compensation Commission Re: United Coal, LLC.

J.   Letter dated April 24, 2007 from Robert Lloyd, Assistant Vice President of Old Republic Insurance Company to Carla Montgomery, Kentucky Office of Workers Claims, Re: United Coal, LLC.

K.   Letter dated May 10, 2007 from Ms. Montgomery, General Counsel, Environmental and Public Protection Cabinet, to AIG regarding filing of notice of cancellation.

L.   Letter dated June 7, 2007 from Mr. Griffin to Thomas Morelli, President, AIG Global Marine & Energy, AIG Global Energy Casualty, Re: The United Company No Claims Letter.

M.   Notice of Intent to Cancel Insurance Policies dated July 10, 2007 from AIG's premium financing subsidiary, A.I. Credit a/k/a AICCO, Inc.

18